399 A.2d 742

**COMMONWEALTH of Pennsylvania**

v.

**Thomas Marvin FREY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1978.

Decided March 9, 1979.

Renald S. Baratta, Easton, for appellant.

No appearance entered nor brief submitted for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant was convicted on March 4, 1976, on charges of recklessly endangering another person and conspiracy. A verdict of not guilty was returned on a charge of attempted murder, and a charge of robbery was withdrawn from the jury following defendant's demurrer. Appellant's motion to suppress evidence obtained as a result of a search of appellant's automobile had previously been granted. Post-verdict motions were denied and a sentence of not less than two nor more than four and one half years was imposed on June 27, 1977.

A co-defendant, Leon Trumbauer, and appellant were tried together, and Trumbauer's appeal of his conviction to this court was affirmed per curiam by an order filed March 3, 1978. However, since the cases have been separated on appeal, we must examine the evidence as it reflects on appellant's guilt to determine if it is sufficient to convict him of the crimes charged. We find that there was indeed not sufficient evidence to convict the appellant on the conspiracy and reckless endangerment charges. Various other trial issues raised need not, therefore, be resolved.

The facts relevant to this appeal are as follows: During the early morning hours of March 5, 1975, at least one, perhaps two or three individuals entered the residence of John and Harvey Potope located in a rural area of Bushkill Township, Northampton County. Harvey Potope testified that a man, later identified as Edward Becker, entered his bedroom, holding a gun, the barrel of which was pointed toward the ceiling. The gun discharged, sending a round into the ceiling. Potope then fired at Becker. Becker cried "I'm hit", and stumbled backward toward the hallway. As Potope searched for more shells, the intruders left. The only individual Mr. Potope saw was Becker, and he was not sure how many intruders were involved, although shots were fired at him from his yard. Becker's body was later found by police on a lawn approximately twenty-five feet from the rear door of the house. John Potope essentially confirmed his brother's account of the incident, although he at no time came into actual contact with the intruders. The Potopes were the only witnesses to the actual events, but neither of them could identify the appellant as one of the intruders nor did either of them hear a car that night. The road was a distance away from the house.

The Commonwealth, therefore, set out to establish a relationship between Edward Becker, co-defendant Leon Trumbauer, and appellant Thomas Frey. All the evidence presented against appellant Frey was circumstantial, and the Commonwealth attempted to meet its burden of proof by seeking to account for Frey's whereabouts immediately before and after the shooting which occurred at approximately 12:30 A.M. Edward Becker's girlfriend, Dona Notti, testified that she and Becker were picked up that evening at 11:30 by Frey in his car. A fourth person later identified as Leon Trumbauer was also in the car. She added that Trumbauer had a ski mask over his face and a gun leaning against his leg. This gun was later traced to Trumbauer. Ms. Notti was then dropped off at her sister's home a few minutes later. The only other evidence presented against appellant was that he was involved in an auto accident at

approximately 2:50 A.M. that morning on Route 512, six miles from the Potope residence. When police arrived at the accident scene, Frey was the only one in the automobile, and he was unconscious. The appellant subsequently gave three different statements to police, involving a night of "bar hopping", however, none mentioned his meeting with Notti and Becker. In one statement, appellant does state that he was with Trumbauer earlier in the evening.

A conviction may be based on circumstantial evidence alone. See *Commonwealth v. Thomas,* 465 Pa. 442, 350 A.2d 847 (1976), and *Commonwealth v. Blosser,* 245 Pa.Super. 558, 369 A.2d 768 (1977). However, "a conviction based solely on inference, suspicion and conjecture cannot stand." *Commonwealth v. Rothman,* 226 Pa.Super. 319, 310 A.2d 353, (1973). Mere presence at or near the scene of a crime is also insufficient to establish guilt. *Commonwealth v. Garrett,* 423 Pa. 8, 222 A.2d 902 (1966). Clearly, mere association is also insufficient.

Even viewing all the evidence in the light most favorable to the Commonwealth, as the verdict winner, we find that it proves nothing more than that on March 5, 1975, the appellant was with Becker at 11:30, Becker was involved in the incident at the Potope home at 12:30, and that appellant was in an accident at 2:50 the same morning. There is nothing that places appellant at any time at the scene of the crime. "[E]vidence sufficient to implicate an accused in a crime 'must be something more than evidence showing remote connection between the accused and the crime, or evidence that merely raises a suspicion of guilty intention.'" *Commonwealth v. Woong Knee New,* 354 Pa. 188, 47 A.2d 450 (1946).

In order to sustain the reckless endangerment charge, there must be sufficient evidence to find appellant guilty of conspiracy. However, to prove criminal conspiracy circumstantially, "the evidence must rise above mere suspicion or possibility of guilty collusion." *Commonwealth v. Burdell,* 380 Pa. 43, 110 A.2d 193 (1955). Rationally, this is

because once a connection is established sufficient to prove conspiracy, the acts and declarations of others become evidence against the accused. See *Benford v. Sanner,* 40 Pa. 9, 80 A.D. 545 (1861). Both quantitatively and qualitatively, the evidence in this case is insufficient to prove an unlawful agreement or confederation.

The judgment of the lower court is reversed, and the appellant discharged.

HESTER, J., concurs in the result.

PRICE, J., dissents.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.