410 A.2d 895

**COMMONWEALTH of Pennsylvania**

v.

**William TURNER, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Aug. 31, 1979.

Reargument Denied Nov. 19, 1979.

1. 75 Pa.C.S. § 4942(a).

60

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence on conviction of robbery. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 3701 (Supp.1978–79). Appellant makes two arguments: (1) that the act—a sudden snatching of a packet of bills from a bank teller's hand—did not amount to robbery under 18 Pa.C.S.A. § 3701(a)(1)(v), which provides that a person is guilty of robbery if he "physically takes or removes property from the person of another by force however slight"; and (2) that the evidence was insufficient to prove that he was the person who snatched the bills.

■ The issue of statutory construction raised by the first argument has been waived for failure to follow Pa.R.Crim.P. 1123, even as it has been most permissively interpreted. In *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), the Supreme Court held that post-verdict motions will be considered waived where not presented to the lower court in writing. Later, however, the Court held that even though no written post-verdict motion was presented to the lower court, an issue will not be considered waived if it was raised in a brief and the lower court considered the issue.[1] *Commonwealth v. Twiggs*, 485 Pa. 481, 402 A.2d 1374 (1979) (concurring opinion by Mr. Chief Justice EAGEN, with Justices O'BRIEN, FLAHERTY and MANDERINO in agreement that there is no waiver). Here, there is no indication in the docket that any written post-verdict motion was ever filed. It is clear from the transcript that a brief was filed and that the lower court considered the issues raised in the brief, but since the brief is not in the record we have no way of knowing what those issues were. All the indications are that the only issue raised in the brief was whether the evidence was sufficient to convict appellant. Early in the proceedings, on a motion to quash, appellant raised the specific issue of statutory construction he now seeks to raise, but the issue was not discussed at trial or afterwards, and the lower court did not address the issue in its opinion.

The evidence at trial was as follows.

On August 4, 1977, at 1:45 p. m., Marilyn Mark, a bank teller, was at work at a branch of the Central Penn National Bank, counting ten-dollar bills. She had just put a rubber band around a packet of 50 ten-dollar bills when someone snatched the packet out of her hand. The robber[2] immedi-

1. In *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979), the Supreme Court eliminated this permissive reading of Rule 1123, and insisted on formal, written post-verdict motions, effective in 60 days.

2. We used the word "robber" here without prejudice to the outcome, in any subsequent case, of the issue of statutory construction that we have found waived, *supra*.

ately fled from the bank, although he was hindered for a moment because he left through the "in" door and it took him a few seconds to open it in the correct direction.[3]  Ms. Mark testified that the robber was clean-shaven with a medium Afro hairstyle.  There was no evidence, however, that she later identified appellant as the robber.  She did not identify him at trial.

The bank manager, Anthony Martello, heard Ms. Mark cry, "I've been robbed."  He looked up and saw someone trying to get out the "in" door; the person was black, about six feet tall, 170 to 180 pounds, light complected with short cropped hair, and wearing a green shirt.  Mr. Martello gave chase.  He saw the robber cross the street, run half a block, and turn into St. Agnes Hospital.  Mr. Martello, and a policeman he had encountered, followed, but they lost track of the robber at the hospital.  There was no evidence that Mr. Martello ever identified appellant as the robber.

Police Officer Hebbons, on duty in uniform in a marked car, got a call at 1:45 to go to the bank in connection with the robbery.  He headed there, but as the result of another radio call he went to an area about two blocks north and west of the bank, stopped his car at the head of an alley, and got out.  He saw appellant running down the alley toward him, in a direction away from the bank.  When appellant suddenly changed direction, Officer Hebbons called to him to stop, but he jumped over a brick wall and entered a house.  Officer Hebbons followed, and apprehended appellant.  Appellant was out of breath and sweating, and was wearing no shirt.  His sneakers were on the wrong feet and the laces were not tied.  Two or three inches from one foot were six ten-dollar bills.  Officer Hebbons took appellant's shoes off and found six more ten-dollar bills inside them.  Appellant had no other money in his possession.  He had a short goatee and a little mustache.  At trial Officer Hebbons described appellant as six feet tall, of medium-heavy build, and of a medium complexion.

**3.** Ms. Mark testified that she turned on the bank's automatic camera after the bills were taken.  It can be inferred that no pictures of the robber were obtained, because the camera pointed at the "out" door.

In deciding the sufficiency of evidence, we must first accept as true all the evidence upon which the trier of fact could properly have based the verdict, and then ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Petrisko*, 442 Pa. 575, 579–80, 275 A.2d 46, 49 (1971). However, guilt must be proved and not conjectured. *Commonwealth v. Wilson*, 225 Pa.Super. 513, 312 A.2d 430 (1973). In considering circumstantial evidence, we bear in mind that

> it is not necessary that each piece of evidence be linked to the appellant beyond a reasonable doubt. It is only necessary that each piece of evidence include the defendant in the group who could be linked while excluding others, and that the combination of evidence link the appellant to the crime beyond a reasonable doubt. *Commonwealth v. Petrisko, supra*, 442 Pa. at 580, 275 A.2d at 49.

Here, there are several pieces of evidence that taken together point to appellant's guilt.

First, when sighted, appellant was running away from the scene of the crime, and when a uniformed officer ordered him to stop, he fled. Evidence of flight may support an inference of guilty knowledge. *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974). The inference must be made with caution, and a finding of guilt must be predicated upon a firmer foundation than a combination of unexplained presence and unexplained flight. *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973). The evidence of appellant's flight is therefore not by itself sufficient, but it is still a piece of evidence, to be considered in combination with the other pieces.

Second, appellant was discovered with twelve ten-dollar bills in his possession or close to him, and had no other money. It is true that of the fifty bills stolen, thirty-eight remained unaccounted for. However, it is possible that appellant had lost the thirty-eight bills—as he was apparently in the process of losing the six bills near his foot—or that,

momentarily believing he had eluded his pursuers, he had hidden them. Sometimes, no doubt, the fact that the apprehended person does not have the loot may be decisive in that in combination with the other pieces of evidence it precludes a finding that he was the robber. Here the fact that appellant had only twelve instead of fifty bills must be considered, but it is not decisive.[4]

Third, apparently appellant had attempted to conceal the money in haste (his sneakers were on the wrong feet) and only a very short time before he was apprehended (given the discomfort of shoes being on the wrong feet).

Fourth, appellant was discovered only a few minutes after the crime occurred, and only a short distance away. In this regard, although the substance of the radio call directing Officer Hebbons to the alley was not admitted into evidence, we are not without a clue as to what it was. On cross-examination of Officer Hebbons, appellant's counsel asked:

Q. At the time you chased this man, you thought he was a suspect in a crime; is that right?

[Commonwealth]: Objection.

&ast; &ast; &ast; &ast; &ast; &ast;

THE COURT: I will permit that. Overruled.

THE WITNESS: Yes, sir, I did.

BY MR. SCHUMAN [appellant's counsel]:

Q. The crime that you thought he was a suspect in is the crime which we are here today in court for, and alleged robbery of a bank; isn't that right?

A. That's correct, sir.

N.T. 50.

Thus it may be inferred that the radio call was to the effect that the bank robber was seen fleeing in the direction of the alley. In addition, on direct examination Officer Hebbons testified that as a result of a radio call he went to the alley.

4. A similar observation may be made with respect to the fact that when apprehended, appellant was wearing no shirt, instead of a green shirt, as the robber was wearing. A shirt may easily be discarded; and a fleeing robber, who knows he has been seen, has an incentive to discard it, especially if it is distinctive.

We note that the substance of the radio call—for example, "They told me that the man who fled the bank was in the alley"—would have been inadmissible hearsay. Also, the admissibility of the Officer's testimony on direct examination, that as a result of the call he went to the alley, was dubious at best, because it so plainly indicated what the substance of the call was. *See Commonwealth v. Farris*, 251 Pa.Super. 277, 380 A.2d 486 (1977). However, here it was appellant's counsel who elicited the officer's testimony on cross, thus linking the radio call and appellant's presence in the alley, and he made no objection to the officer's testimony on direct.

Taken in combination, these several pieces of evidence, we conclude, were sufficient to support a finding of appellant's guilt beyond a reasonable doubt. Appellant argues, however, that other aspects of the evidence, in the nature of contradictions or gaps in the evidence, make the evidence insufficient.

Although appellant generally fit the description of the robber, as to height, race, build, hair and complexion (making allowances for the subjectivity involved in some of these assessments), Ms. Marks, the teller, said he was clean shaven while in fact he had a short goatee and mustache. It is therefore fair to say that the teller's description and appellant's actual appearance represent contradictory pieces of evidence. However, given that Ms. Marks had at best a fleeting glimpse of the robber, any facial hair he had might well have gone unnoticed.

More troublesome is the lack of any evidence of an immediate identification of appellant as the robber. We do not know why this is so. One would suppose that appellant would have been brought back to the bank, and Ms. Marks, and others in the bank, asked if they could identify him as the robber. For the sake of argument, we shall assume that if this had been done, no one could have identified appellant.[5] (Appellant cannot complain about our making this

5. It can be inferred from Martello's testimony that he never saw the robber's face, but only his found at 42 Pa.C.A. § 6108.

assumption, for it is entirely in his favor.) In some circumstances it may be that a victim's inability to identify an attacker is so troublesome as by itself to create a reasonable doubt. Suppose, for example, that the victim had an extended and unhampered opportunity to see an attacker. Here, however, the bank personnel had very little time to see the robber. Their (assumed) inability to identify appellant, had he been brought to the bank immediately after the robbery, therefore would not detract from the force of the other evidence to such an extent as to preclude a finding of appellant's guilt.

Affirmed.