432 A.2d 1042

COMMONWEALTH of Pennsylvania

v.

Norma Jean SUGGS, Appellant.

COMMONWEALTH of Pennsylvania

v.

Willie E. BLANKENSHIP, Appellant.

Superior Court of Pennsylvania.

Submitted March 6, 1980.

Filed July 17, 1981.

46

Nino V. Tinari, Philadelphia, for appellants.

Floyd P. Jones, Assistant District Attorney, York, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

On June 2, 1977, a written complaint was filed against the appellants in this case. Appellant, Willie Blankenship, was charged with Possession of Drugs with Intent to Deliver, two counts of Delivery of Drugs, and Criminal Conspiracy. Appellant, Norma Jean Suggs, was charged with two counts

of Delivery of Drugs and Criminal Conspiracy. After a consolidated trial by jury on January 16–18, 1978, appellants were found guilty of the above offenses. Norma Jean Suggs was sentenced to concurrent terms of one and one-half (1½) to three (3) years imprisonment on each count, and Blankenship was ordered to undergo imprisonment for not less than six (6) nor more than twelve (12) years and was fined $100,000. Timely post-trial motions were filed, argued, and denied. Appellants thereafter perfected this appeal.

Appellants raise six separate issues on appeal seeking the reversal of judgments of sentence and dismissal of the charges, or in the alternatives, a new trial. A close review of appellant's contentions has convinced us that they are without merit. Accordingly, we affirm.

The first issue presented for our consideration concerns an alleged violation of Pa.R.Crim.P. 1100. This rule directs that all cases in which a written complaint is filed against a defendant after June 30, 1974, are to be tried within 180 days from the date on which the complaint is filed. Pa.R. Crim.P. 1100(a)(2). Appellants advance the argument that they were not brought to trial within the mandatory period and that the two extensions of time granted to the Commonwealth to do so were improper. The two extensions were allegedly improper in two respects, namely, the Commonwealth failed to demonstrate due diligence in pursuing a timely trial and, secondly, the record was deficient in establishing the causes of the delays. In order to properly analyze these arguments, the pertinent procedural history must be delineated.

As stated above, the complaint was filed on June 2, 1977 [1] and the preliminary hearing was held on July 12, 1977. Appellants were arraigned on September 12, 1977 and the case was listed for the October Term, 1977, of the Criminal Division of York County Court of Common Pleas. The court failed to reach this case in that term, thereby necessitating a

1. The 180–day period in which to try the appellants would therefore expire on November 29, 1977.

. rescheduling of the trial for November 28, 1977. The appellants were not brought to trial on the rescheduled date. Therefore, on November 29, 1977, the Commonwealth filed an Application for Extension of Time in which to try the appellants. On December 16, 1977, the Honorable Joseph E. Erb granted the Commonwealth's petition and ordered the case to be tried on or before December 23, 1977. Again, the case was not reached, and again the Commonwealth, through its Application for Extension of Time, sought another permissive delay. The Honorable Albert G. Blakey granted this petition on January 10, 1978 and ordered that appellants be tried on January 16–18, 1978, and adjudged guilty on all counts.

■ The standard which must be met for a petition to be granted is enunciated in Pa.R.Crim.P. 1100(c), which provides:

"At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial ... Such application shall be granted only if trial cannot be commenced within the prescribed period *despite due diligence* by the Commonwealth ..." (emphasis added)

Appellant initially contends that the Commonwealth did not employ due diligence in scheduling the preliminary hearing on July 12, 1977, forty days after the complaint was filed. A preliminary hearing was originally scheduled for June 15, 1977, however, the District Justice was on vacation for two weeks, thereby causing a backlog of cases. We do not find this period to be evidence of lack of diligence on the part of the Commonwealth.

■ The complaint was received by the Clerk of Courts of York County on July 19, 1977. The information was subsequently filed prior to August 29, 1977. Appellants were arraigned on September 12, 1977, with the case being listed for trial on October 18, 1977. An examination of the steps taken by the district attorney's office indicates to us that they were employing due diligence, with the longest period

between action on the case being forty-eight (48) days. The case upon which appellants rely, *Commonwealth v. Martin*, 246 Pa.Super. 407, 371 A.2d 903 (1977), is inapposite. Therein, the Commonwealth did nothing to bring the defendant to trial until almost four months after the complaint was filed. Such was not the case herein. The Commonwealth utilized due diligence with respect to the appellants' charges, and the case progressed in an orderly and timely fashion.

Appellants additionally argue that the Commonwealth did not employ due diligence in relying upon judicial delay as a basis for its extensions of time in which to try appellants.

The Supreme Court addressed the issue of timely applications by the prosecution to extend the prescribed time for trial on the sole ground that the court cannot provide trial pursuant to the mandates of Rule 1100 in *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976). While recognizing that the spirit and intent of Rule 1100 was to reduce the backlog of criminal cases and provide an objective standard for the achievement of a speedy trial, for a defendant, the Supreme Court acknowledged that often circumstances within the judicial administration would arise making the trial of a defendant within the prescribed period an impossibility. See *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976). In such instances,

"... The policies which prompted the adoption of Rule 1100 would not be served by disallowing a reasonable, limited extension..." *Commonwealth v. Mayfield*, supra, 469 Pa. at 220, 364 A.2d at 1348.

The *Mayfield* court enumerated the requirements to be met in order for an application for extension of time to be properly granted:

"Henceforth, the trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the due diligence of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court

delay and the reasons why the delay cannot be avoided." Id., 469 Pa. at 222, 364 A.2d at 1349–1350.

Appellants assert that the Commonwealth met neither of the above requirements outlined by the *Mayfield* court. We disagree.

The case was originally scheduled for the October, 1977 term of criminal court, well within the mandated time of trial. The Honorable Robert I. Shadle was assigned to hear this case, however, during the two-week-long term, he was unable to try the appellants due to other criminal matters. The appellants' trial was therefore postponed until the November 1977 term, which encompassed only one week. The 180–day period expired in the middle of the week, thereby necessitating that the Commonwealth filed a petition for an extension. In the petition, the Commonwealth averred that appellants' counsel was himself occupied with another trial for three of the five days of the term. Combined with defense counsel's unavailability and the crowded court schedule, the Commonwealth was unfortunately unsuccessful in commencing trial in the November term. After a hearing before Judge Erb, the Commonwealth received an extension to try the appellants by December 23, 1977.

Reviewing the record and the reasons advanced by the prosecution, we find that the Commonwealth proceeded with due diligence in its efforts to commence trial. See *Commonwealth v. Wilson*, 258 Pa.Super. 231, 392 A.2d 769 (1978). (Therein, Judge Cercone stated that "The petition for an extension was sufficient on its face in stating that, despite its due diligence, the Commonwealth was unable to bring appellant to trial within 180 days because of the unavailability of a sufficient number of judges to try the criminal cases then pending in Delaware County.") *Commonwealth v. Cimaszewski*, 261 Pa.Super. 39, 395 A.2d 931 (1978).

The case at bar was reassigned for trial in the December 1977 term to Judge Blakey. This term consisted of four days, and, again, the defense counsel was occupied for two of those four days. Judge Blakey was unable to accommodate appellants' trial in his schedule, consequently, the Com-

monwealth sought another delay. Judge Blakey presided at the Rule 1100 hearing on January 10, 1978, and based upon defense counsel's unavailability and his own backlogged schedule, granted the Commonwealth's request upon the condition that appellants be tried in the January, 1978 term. Appellants were finally tried in this term and, as stated previously, convicted on all counts.

Although repetitious requests for extensions of time by the Commonwealth are to be discouraged, that fact alone cannot preclude findings of due diligence. *Commonwealth v. Royer*, 256 Pa.Super. 361, 389 A.2d 1165 (1978). Each petition must be individually reviewed to determine its merits. We are satisfied that in both instances, the Commonwealth moved with due diligence. Both petitions were timely filed. The Commonwealth was handicapped by very short criminal trial terms, and the contributions to the delay by the unavailability of defense counsel cannot be ignored. Both Rule 1100 hearings established complete and thorough records detailing the reasons why the scheduled judges were unable to hear the trial.

This last point brings us to appellants' complaint that the second requirement of *Mayfield* was unsatisfied. They contend that the record was void as to the causes of the court delay and the reasons why the delay cannot be avoided. We believe the record to be very comprehensive in this regard. The Commonwealth's first petition on November 29, 1977 stated:

" . . . the case could not be tried during the October Sessions, 1977 of Criminal Court due to the crowded court calender. This case was scheduled for Trial before Judge Shadle and he was occupied with criminal matters from Monday, October 17, 1977 through Friday, October 28, 1977. This prohibited the Commonwealth from calling this case to trial during that term of Court. The case was rescheduled for the November Sessions, 1977 of Criminal Court, and Mr. Shoemaker has been occupied with a criminal case beginning on Monday, November 28, 1977 through today. The case will be heard during the November Sessions, 1977 of criminal court if time permits."

Attached to this petition was an exhibit detailing Judge Shadle's court schedule from Monday, October 17 to Friday, October 28, 1977. The hearing was held on this petition on December 15–16, 1977 and encompassed one-hundred fourteen (114) pages of testimony and legal argument. At this hearing, the scheduling clerk for the District Attorney's office presented testimony concerning the schedules of all three judges who had been sitting during the November, 1977 term. At the conclusions, the judge stated:

"Although there were some short periods of time during which some of the judges were not shown to be sitting on criminal matters during that week's term, there is no extensive period within which the Commonwealth could have reasonably been expected to present a full trial in the case which the Court is considering.

Appellants were not satisfied with a review of all the judges sitting in that session, but demanded an accounting of the schedules of every courtroom in York County for the prior 180 days in order to demonstrate that appellants could not be brought to trial. This we refuse to do. As long as the defendant cannot prove that the Commonwealth failed to employ due diligence at some point in the 180–day period, we will limit our review to whether the Commonwealth could not try the appellants in the last criminal term before the expiration of the 180–days despite due diligence. As the Rule 1100 judge stated:

"Counsel has indicated his wish to go over all of the sittings of the Court during the six month period preceding the November term of Court. While we suppose again, in the perfect system, such a request would be granted, we must again address ourselves to the practicality which faces us here. To investigate in each case the total factual situation concerning the scheduling of that particular case, not only encompasses the determinations of the utilization of the Court during criminal sessions over a six-month period for four judges, but also the availability of counsel to actively pursue their criminal practice and who represent numerous Defendants, the

in-depth study as to why a Court was not sitting at a particular time, which may not have been for the reason that cases were not ready to go to trial, but because of other business unrelated to the criminal courts came before the Court, such as Preliminary Injunctions, Abuse matters, Juvenile matters, all of which require hearings within a short period of time, and which the Court must give precedence over other matters."

We required no such demanding proof from the district attorney in *Commonwealth v. Zirkle*, 251 Pa.Super. 214, 380 A.2d 454 (1977). Therein, the trial judge certified that he was unable to reach the case in question during that criminal term due to an over-crowded schedule. In rejecting appellants' claimed violation of Rule 1100, we noted:

"Here, the record shows that the Commonwealth had listed the case and was ready to proceed to trial, but was prevented from so doing by the inability of the trial judge to hear the case."

We hold that a record which reflects the inability of the assigned trial judge to hear the case is sufficient to support a finding of due diligence. Therefore, we reject appellants' contention that this January 10, 1978 Rule 1100 hearing was incomplete. At that hearing, "[t]he Commonwealth presented testimony by the deputy clerk of court assigned to the Honorable Albert G. Blakey indicating the judge was fully occupied during the December, 1977 criminal term." This evidence, along with the unavailability of the defense counsel for two days in that term, satisfied the second requirement of *Mayfield*.

■ Appellants also attacked the procedure of assigning specific cases to specific judges. They argue that the Commonwealth,

"by limiting itself to bringing a matter before a particular judge, (it) has caused more Judges to be without work, other Judges may be over-scheduled . . ."

We refuse to prohibit this administrative device in favor of other methods. While an occasional problem may develop, such as the one at hand, just the existence and implications

of Rule 1100 will serve as an impetus to achieve the most efficacious distribution of case loads among the judiciary. Further, we will not require, as appellants would have us do, that cases be tried according to the sole priority of age. We concur with Judge Erb when he considered this at the Rule 1100 hearing on December 16, 1977:

"While we do agree that [age] should be a factor, we must recognize the position of the District Attorney in this area, and that the consideration of other matters enumerated by them should also be considered. Obviously the severity of the charge, the availability of witnesses, the availability of counsel, whether or not the Defendant is incarcerated, are all factors, among others, that must be considered by the District Attorney in the scheduling of criminal cases." Contra: *Commonwealth v. Crowley*, 281 Pa.Super. 26, 421 A.2d 1129 (1980).

We do not mean to denigrate the intents and purpose of Rule 1100. In fact, we support the strides it has made in serving the speedy trial rights of defendants. Should the mandates of this rule not be complied with, then the burden is justifiably upon the Commonwealth to prove that it acted with due diligence, yet in the final analysis was unable to bring appellant to trial. In this particular case, we are satisfied that the Commonwealth fully complied with the mandates of Rule 1100 and the dictates of *Mayfield*.

■ Appellants next contend that the lower court erred in refusing to provide separate sets of challenges for each defendant. In advancing this argument, the appellants rely on 19 P.S. § 785, which authorizes

"In all cases in which two or more persons are jointly indicted for any offense, it shall be in the discretion of the court to try them jointly or severally, except that in cases of felonious homicide, the parties charged shall have the right to demand separate trials; and in all cases of joint trials, the accused shall have the right to the same number of peremptory challenges to which either would be enti-

tled if separately tried, and no more. 1860 March 31, P.L. 427, § 40.[2]

When this case was consolidated and called for trial, the lower court called twenty-eight (28) jurors, a sufficient number to allow seven peremptory challenges for each defendant. The appellants only exercised one challenge, and did not register an exception to the number of challenges until the challenged and extra jurors were excused. Only then did appellants seek additional challenges. The Commonwealth aptly summarized appellants' conduct in its brief.

"No request for such additional challenges was made at the pre-trial conference when the parties agreed to consolidate all charges for trial, no request was made prior to the selection of the jury, and no request was made prior to excusing the challenged jurors and those who remained over the twelve selected. Furthermore, Defendants had not even exhausted their peremptory challenges at the time they entered their exception."

The Commonwealth therefore argues that any objection to the selection of the jury has been waived. We concur. See *Commonwealth v. Kubacki*, 208 Pa.Super. 523, 224 A.2d 80 (1966).

Furthermore, even if it were not waived, the statute upon which the appellants rely has been interpreted so as to grant defendants, whether jointly or individually indicted, only the number of peremptory challenges as an individual defendant. *Commonwealth v. Kubacki*, supra, 208 Pa.Super. at 528, 224 A.2d at 83. *Commonwealth v. Weeden*, 457 Pa. 436, 442, 322 A.2d 343, 347 (1974). In spite of this interpretation, appellants were presented with the opportunity to challenge seven jurors each, and failed to do so. Their general allegations of error, with no showing of prejudice or harm, must therefore be dismissed.

Appellant Blankenship specifically alleges prejudice against his interests by the introduction of certain testimonial evidence. A Commonwealth witness testified about a

2. This provision was repealed on April 28, 1978, P.L. 202, No. 53, § 2(a) [377] effective June 27, 1978.

telephone call made by appellant Suggs in his presence. The identity of the recipient of the telephone call was never firmly established. Nonetheless, appellant Blankenship asserts that this conversation, which mentioned his involvement in illicit activities, was used against him to his detriment. As a result of appellant Suggs' decision not to testify, Blankenship complains that he has been deprived of the opportunity to confront and cross-examine the witnesses against him.

There are several fundamental flaws in appellant's reargument. While it is true that a statement made by one defendant incriminating a co-defendant is generally inadmissible against the other, *Commonwealth v. Witherspoon*, 481 Pa. 321, 392 A.2d 1313 (1978), an exception arises when conspiracy charges exist. *Commonwealth v. Trolene*, 263 Pa.Super. 263, 397 A.2d 1200 (1979); *Commonwealth v. Frey*, 264 Pa.Super. 212, 399 A.2d 742 (1979). Such is the case herein. Regardless of this fact, even if there were no conspiracy charge, the rule which prohibits the introduction of a co-defendant's statement inculpating the other when the declarant refuses to submit to cross-examination, see *Bruton v. U. S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is only applicable where the challenged remark directly implicates the complaining defendant. *U. S. v. Belle*, 593 F.2d 487 (3rd Cir., 1979). The offending remark in the case at bar, which involved appellant Suggs stating she would call "Willie" and proceeding to do so, cannot be viewed as conclusively proving that appellant Blankenship was the recipient of the telephone call. In order to insure that such an insinuation did not arise, the lower court cautioned the jury that there was no proof that the reference to "Willie" meant Blankenship. He further instructed the jury that they were not to consider that statement, and all that flowed from it, as evidence against him.

In a final note on this issue, the testimony concerning the telephone call made by appellant Suggs was evidence offered to support Suggs' conviction for the delivery of heroin on April 5, 1977. Blankenship was not charged in connection

with this particular offense, and, consequently, was not denied his right to confront any witness against him.

■ Appellants also argue that the trial judge erred in not granting a mistrial when the sequestration order was allegedly violated. The Commonwealth vehemently denies that any violation of the order occurred, or that the motion for mistrial was improperly denied. During one point in the Commonwealth's opening statement, counsel for appellant Blankenship objected:

MR. SHOEMAKER: "Your honor, I would like to request, first of all I would like to take exception to the Commonwealth's opening remarks as being argumentative. Secondly, since he is now describing certain facts which may overlap, I would like to request now, sequestration of the witnesses so they may not be educated by the Commonwealth's opening address."

THE COURT: "We will grant sequestration of the witnesses for the Commonwealth. Wait outside in the hall and we will call you in one at a time."

The obvious purpose of such sequestration is to avoid the possibility of witnesses modifying or shaping their testimony on the basis of what they heard others say.

■ The facts of this case concern drug-dealing by the appellants. On the first day of trial, two undercover agents testified to their transactions with the appellants. After the first day of trial, the undercover agents realized that the absence of the witness who introduced them to the appellants would create an adverse inference against the Commonwealth and would suggest entrapment. The agents thereupon located the witness, informed her why she was being called, and arranged for her appearance in court the next day.

Appellants now contend that the sequestration order was violated in light of the witnesses' discussion with the agent. However, appellants rely on the bare fact that the agents spoke with the witness prior to her testifying. They do not argue that the witness heard or was informed of the agents'

testimony, nor do they contend that her testimony was in any way tempered by her conversations with the agents. Indeed, appellants attempted to illustrate just such an influence when they cross-examined this witness at trial. All they elicited from the witness was that she spoke with the undercover agents about the testimony she would give. There is no evidence that the agents reiterated their testimony for her benefit. On the record before us, we cannot conclude that the sequestration order was in fact violated. See *Commonwealth v. Martin*, 479 Pa. 609, 388 A.2d 1361 (1978); *Commonwealth v. Gibson*, 245 Pa.Super. 103, 369 A.2d 314 (1976). Therefore, we refuse to find the lower court abused its discretion in denying appellant's motion for a mistrial.

Appellants cite as additional bases for relief two purported defects in the jury charge. The first flaw centers on that aspect of the charge concerning entrapment. Therein, appellants claim error by the trial judge for stating that the appellants had the burden of proving entrapment by a preponderance of the evidence. Appellants argue that the jury would be easily confused by such a charge on entrapment on the one hand, and on the other hand, being informed of the burden on the Commonwealth to prove every element of every crime beyond a reasonable doubt.

This argument has been rejected by our court before and is now again rejected. The lower court's charge on entrapment was in complete accord with 18 Pa. C.S.A. § 313 of the Crimes Code and with pertinent case law. See *Commonwealth v. Jones*, 242 Pa.Super. 303, 363 A.2d 1281 (1976). *Commonwealth v. Cameron*, 247 Pa.Super. 435, 372 A.2d 904 (1977). *Commonwealth v. Loccisano*, 243 Pa.Super. 522, 366 A.2d 276 (1976).

Appellants requested the lower court to charge the jury that, if two or more equal inferences arose from circumstantial evidence, they could not select or guess at inferences of guilt. The lower court refused to so charge, and we agree with the Commonwealth that such refusal was reasonable and proper.

Appellants rely on *Commonwealth v. New*, 354 Pa. 188, 47 A.2d 450 (1946) as authority for their position that the exclusion of such a charge was reversible error. However, that case is inapposite to the one at bar, for *New* concerned an insufficiency of the evidence argument.

Herein, the charge to the jury was thorough and comprehensive. The lower court expounded upon the Commonwealth's burden of proof beyond a reasonable doubt more than once in its lengthy charge. With respect to circumstantial evidence, the jury was instructed that all the pieces of evidence, when considered in total must reasonably and naturally lead to the conclusion that the defendants were guilty beyond a reasonable doubt. See *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969). *Commonwealth v. Turner*, 270 Pa.Super. 58, 410 A.2d 895 (1979). We are more than satisfied that the jury charge was proper in all respects, including this one.

Requested relief is hereby denied.

CERCONE, President Judge, files a dissenting opinion.

CERCONE, President Judge, dissenting:

I dissent. In my view appellants' right to a speedy trial, as those rights are defined by Rule 1100 of the Rules of Criminal Procedure and our case law, were violated here, and appellants ought to be discharged.

Rule 1100(c) provides that applications by the Commonwealth to extend the time for trial may be granted "only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." Since *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976), Rule 1100(c) has been interpreted to require a record showing of due diligence. The Supreme Court stated there:

Henceforth, the trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the "due diligence" of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the

court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided. *Id.*, 469 Pa. at 222, 364 A.2d at 1349–1350. *Cf. Commonwealth v. Mines*, 282 Pa.Super. 157, 422 A.2d 876 (1980); *Commonwealth v. Berry*, 271 Pa.Super. 466, 414 A.2d 130 (1979); *Commonwealth v. Warman*, 260 Pa.Super. 130, 393 A.2d 1046 (1978). Mere assertions of due diligence and allegations of fact do not establish cause for an extension of time under Rule 1100(c). See *Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979); *Commonwealth v. Antonuccio*, 257 Pa.Super. 535, 390 A.2d 1366 (1978); *Commonwealth v. Ray*, 240 Pa.Super. 33, 360 A.2d 925 (1976). Of course, the Commonwealth may obtain the extension it seeks if it presents sufficient evidence at the hearing on the Rule 1100 application. *Commonwealth v. Mines, supra; Commonwealth v. Cimaszewski*, 261 Pa.Super. 39, 395 A.2d 931 (1978). In our review of the hearing court's ruling we may consider the evidence presented by the Commonwealth and only so much of the defense evidence which goes uncontradicted. *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977); *Commonwealth v. Mines, supra.*

There were two Rule 1100 hearings in this case, one in December, 1977 and another in January, 1978. At the first such hearing the Commonwealth presented extensive evidence of the case backlog in the county and the heavy workload of the three judges who sat during the November criminal sessions. There was little evidence, however, pertaining to the "age" of the cases tried during the November sessions. It would appear that at least one case could have been postponed until the December criminal sessions in order to make room for trial of the instant case. This could have been done without creating a Rule 1100 problem in the other case, because the run date on that case was not until December 5. Furthermore, in that case there was time which was chargeable against the defendant which would have permitted even further extension. In its order granting the first petition for extension of time the court stated the following:

Counsel has indicated that the court should make a determination as to the age of each case that was tried before each court, taking the position, apparently, that the only consideration for the scheduling of trials should be the age of the cases. While we do agree that that should be a factor, we must recognize the position of the District Attorney in this area, and that the consideration of other matters enumerated by them should also be considered. Obviously, the severity of the charge, the availability of witnesses, the availability of counsel, whether or not the Defendant is incarcerated, are all factors, among others, that must be considered by the District Attorney in the scheduling of criminal cases.

I do not dispute the correctness of the lower court's reasoning, there are clearly other factors which must be considered when cases are scheduled for trial. However, the mandate of Rule 1100 is clear insofar as it concerns the time in which a case may be brought to trial. One hundred eighty days is the period fixed by our Supreme Court.[1] When there are no problems, such as unavailable witnesses or counsel's time conflicts, then an extension of time for trial simply because other cases have been scheduled by the District Attorney for trial ahead of the one with Rule 1100 problems is improper. This is all the more true when among those cases tried there is one or more which has no Rule 1100 problem. Furthermore, in a county where the District Attorney has the responsibility not only of scheduling the order in which criminal cases will be tried but also of assigning cases to particular judges, the failure to schedule a case with a Rule 1100 problem in advance of another case lacking such problem cannot reasonably be construed to constitute due diligence on the Commonwealth's part.

I am fully cognizant of the difficulty which faced the York County court in November of 1977. There were in excess of 170 criminal cases pending at the time and only three judges to hear them. What would have been a difficult situation at any time was made the more so by the

1. Florida allows only 120 days.

unexpected absence from the bench during the November criminal sessions of one of the four judges previously scheduled to sit. Nevertheless, *Mayfield* permits judicial delay only when it could not have been avoided. On this point, Justice Roberts, sitting by designation on this Court, recently wrote:

The court of common pleas held that judicial "delay" is permissible when it results, as is claimed here, from a backlog in the court system. Such a reason, standing alone, however, cannot justify an extension under Rule 1100. This rule was promulgated, in part, as a response to trial delays caused by the existence of case backlogs. See *Commonwealth v. Hamilton*, [449 Pa. 297, 306, 297 A.2d at 127, 131–32 (1972)]. To now hold that a backlog excuses delay would be contrary to the very objectives of our Rules of Criminal Procedure.

In any event, the court of common pleas did not conclude that the judicial "delay" could not have been "avoided" as required by *Mayfield*. There is nothing in the opinion of the common pleas court or the record to suggest, for example, that appellant's case could not have been scheduled for trial ahead of other cases which did not suffer similar Rule 1100 problems. Recognizing that the Commonwealth has the burden of proving by a preponderance of the evidence that the requirements of Rule 1100(c) have been satisfied, *Commonwealth v. Ehredt*, 485 Pa. 191, 194, 401 A.2d 358, 360 (1979), we accordingly must conclude that the judicial "delay" here did not justify the time extension granted the Commonwealth.

*Commonwealth v. Crowley*, 281 Pa.Super. 26, 30, 421 A.2d 1129, 1131 (1980).[2] And see *Commonwealth v. Levitt*, 287

2. *Crowley* involved an appeal from a finding of effective assistance of counsel by the lower court following remand of appellant's direct appeal by this Court. The remand was necessitated by appellant's contention that his Rule 1100 rights had been violated and that trial counsel had been ineffective for failing to oppose the Commonwealth's petition for extension. The court based its finding of effectiveness on the theory that even if he had opposed the petition it would have been granted, because, in its view, the judicial delay which prompted the Commonwealth's petition was supposedly a

Pa.Super. 115, 429 A.2d 1126 (1981). In this case, in its first order granting the extension of time in which to bring appellants to trial, the lower court stated:

> ... We do not find the [court's idle] periods to be out of the ordinary, and as we have indicated, we do not find that the particular cases could have been tried unless other cases that were tried would not have been tried.

I take this to mean that in order to have brought appellants timely to trial, the trial of other cases would have to have been postponed. Postponing appellants trial would not have been error if the cases tried before theirs presented some special scheduling problem, or were more "aged" by Rule 1100 standards. However, to rely merely on the fact that the District Attorney had scheduled one case in place of another without specifically inquiring into the reason for such schedulings, particularly where the age of the case is such an important factor, does not, in my opinion, constitute permissible judicial delay.

There was, however, a second petition for extension of time for trial in this case. If the first Rule 1100 extension was not erroneous the second order granting extension certainly was. The pertinent portion of the court's order reads:

> Other than argument, the record before us is limited to a statement of the Clerk of Courts offered to support the conclusion that this Court had no other time available to handle more cases than were handled during the December term, which was a period of one week.

> The issue before the Court, as we see it, is whether the cases were not tried notwithstanding due diligence by the Commonwealth. Focusing on that issue, we do first conclude that the time of this Court was fully occupied with the trial of cases. We will concede that [Defense Counsel] himself was no doubt available for trial of other cases on Thursday and Friday of the one week term, but the Court

"permissible delay." We reversed, holding such judicial delay an improper basis for granting a petition for extension and thus counsel to be ineffective for not opposing the petition. The conviction was reversed and appellant ordered discharged.

was then dealing with other matters called by the district attorney.

As we understand the law, the district attorney still has the prerogative of presenting cases that he considers appropriate and, therefore, we do not consider the availability of [Defense Counsel] relevant to this issue. Further, we propose to rule on this matter limiting ourselves to whether we were able to handle these additional cases without attempting to interrogate every other judge in this county to see if they could have handled one more case on some theoretical assumption. The district attorney does prepare a trial list which is an administrative device indicating what cases will be heard in what court rooms, handled by what assistant district attorneys.

We will concede that this is not followed religiously, that when cases fold, a matter may be transferred from one court room to another. But, we consider it sound administrative advice which is a great aid to all involved, including counsel for the defendants and their witnesses and we think it sufficiently deals with these Rule 1100's on the basis that we in this court room could not have handled more, without going further afield.

I believe the court erred in finding due diligence on the part of the Commonwealth. The record is devoid of any evidence pertaining to the case load or trial activity before the other York County judges. Nor is there any indication of the Rule 1100 age of any of the cases actually heard by the judge to whom appellants' case was assigned, and who incidentally also heard the Rule 1100 petition. Surely this does not constitute the required "record showing" of due diligence on the Commonwealth's part. To hold so flies directly in the face of Rule 1100 and the reasons for its institution. Furthermore, judicially conceived justifications for granting applications for extension of the time for trial have been disapproved by our case law. See *Commonwealth v. Ehredt, supra; Commonwealth v. Berry, supra; Commonwealth v. Miller,* 270 Pa.Super. 178, 411 A.2d 238 (1979).

For the reasons set out above I would reverse appellants' convictions and order them discharged.