J-S12006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| XAVIER GLYNN | : | |
| | : | |
| Appellant | : | No. 1051 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 27, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005014-2018

BEFORE: BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 25, 2022**

Appellant, Xavier Glynn, appeals from the judgment of sentence of 2-4 years' incarceration, and a consecutive term of 4 years' probation, imposed after the trial court found him guilty of strangulation, simple assault, recklessly endangering another person, and harassment.[1] After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

The incidents in this case took place on June 3, 2018. Samarah Wright (hereinafter "Complainant"), Officer [Daniel] Banach, and S.W., a minor, (hereinafter "Witness"), testified to the below facts at trial. On June 3, 2018, at around 6:30 pm[,] Complainant was at her home located in the City and County of Philadelphia. Appellant knocked on the door, which was opened by Complainant, and Appellant proceeded to push past Complainant. Appellant sat on the bed next to the [Complainant's] baby and proceeded to eat food he had brought. The baby was crying because he was hungry. Complainant asked Appellant to feed the

_____

[1] Respectively, 18 Pa.C.S. §§ 2718, 2701, 2705, and 2709.

baby and Appellant began to verbally attack Complainant. Complainant got upset and asked Appellant to leave the house. Appellant agreed to leave but insisted he was taking the child with him. Complainant stood in the doorway and pushed Appellant back to [prevent] him [from] leaving. Appellant ha[d] never taken [his] son alone and Complainant insisted she would not allow it. Appellant got frustrated and grabbed the back of Complainant's neck and pushed her down. Both Appellant and Complainant then began arguing and tussled with each other as Complainant was trying to get the baby out of Appellant's arm. During the tussle[,] Appellant [was] punching, pushing, and pulling [the] hair of Complainant. As the tussle continued[,] Complainant ended up on her bed with Appellant on top of her. Complainant was yelling and screaming, and Appellant proceeded to choke Complain[an]t. Complainant yelled for her daughter to come get the baby and to call the police. Complainant's daughter attempted to get the baby but was pushed by Appellant. Once again, Appellant proceeded to choke Complainant to the point where she blacked out. Appellant then released Complainant. During this time[,] the baby had been next to the Complainant on the bed. After Complainant blacked out and came back to, Appellant grabbed the baby and stood up. Complainant refused to let him leave and grabbed for the baby. Another tussle ensued by a chair and the police arrived. Complainant broke free from being underneath Appellant, but he still had the child. Police on scene were going to tase Appellant[,] but Complainant screamed[,] making them aware of the baby he was shielding by barricading himself in the chair. At this point[,] Appellant was holding the baby by the arm and was told to drop the baby, who was crying hysterically. Appellant let the baby go[,] dropping him right into the crib. Appellant was told to put his hands behind his back and immediately cl[e]nched his fists together. The officers were able to break the grip of his arms and place him under arrest.

The injuries sustained by Complainant were a cut inside her mouth, red markings [on] her neck[,] and scratches on her neck, arms[,] and face. The baby was treated at Einstein Medical [Center] for a blood clot in the eye, or subconjunctival hemorrhage.

Trial Court Opinion (TCO), 11/16/20, at 2-3.

On February 1, 2019, Appellant proceeded to a non-jury trial after waiving his right to a jury, and the trial court ultimately convicted him of the above-stated offenses. *Id.* at 1. On September 27, 2019, Appellant was sentenced to 2-4 years' incarceration, followed by 4 years' probation. On October 4, 2019, Appellant timely filed a motion for reconsideration of his sentence, which was denied by operation of law on March 9, 2020. On April 8, 2020, Appellant filed a timely notice of appeal. On June 25, 2020, Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement. The court filed its Rule 1925(a) opinion on November 16, 2020.

Appellant now presents the following questions for our review:

1. Whether the court erred in finding … Appellant guilty beyond a reasonable doubt?

2. Whether the court erred in a finding of guilt when the Commonwealth['s] witnesses offered testimony supporting two opposing propositions?

3. Whether Appellant was deprived of the effective assistance of counsel?

Appellant's Brief at 6.

In his first argument, Appellant asserts that there was insufficient evidence supporting his strangulation charge. He contends that this was a "he said, she said" case where the physical evidence "does not support the testimonial evidence[.]" *Id.* at 9. More specifically, Appellant argues that the photographs of Complainant's neck failed to corroborate her testimony that she had been choked to the point of unconsciousness. *Id.* at 10. He claims that if "an individual is choked to the point of losing consciousness in the

manner which [C]omplainant describes it[,]" it "would stand to reason that there would be some swelling or bruising, but in the instant matter there was merely some redness and that is all." *Id.*

Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant's sufficiency claim is focused on his conviction for strangulation. "A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by: (1) applying pressure to the throat or neck; or (2) blocking the nose and mouth of the person." 18 Pa.C.S. § 2718(a). Additionally, the statute explicitly provides that "physical injury to a victim shall not be an element of the offense[,]" and that the "lack of physical injury to a victim shall not be a defense in a prosecution under this section." 18 Pa.C.S. § 2718(b).

Under the express terms of the statute, Appellant's sufficiency argument is meritless. The Commonwealth was not required to prove any physical injury

to Complainant for the offense of strangulation, and a lack of physical injury is expressly excluded as a defense by the strangulation statute. ***See id.*** Thus, Appellant's argument that the lack of evidence of physical injury caused by his strangulation of Complainant is of no moment with respect to the sufficiency of the evidence. Complainant specifically testified that Appellant choked her while she laid on her bed. N.T. Trial, 2/1/19, at 17-18. She physically demonstrated for the trial court that Appellant had put "two hands around her throat" while he was on top of her. ***Id.*** at 18. Complainant further testified that she could not breathe, and she began to blackout before Appellant released his grip. ***Id.*** at 19. Complainant's minor daughter, Witness, testified that after Complainant directed her to call the police, Appellant "was choking [Complainant] to where she blacked out." ***Id.*** at 49. She further observed that Complainant briefly looked like "she was dead" before she woke back up. ***Id.***

This evidence was plainly sufficient to demonstrate that Appellant knowingly impeded Complainant's breathing or circulation by applying pressure to her neck. Indeed, Complainant's testimony was alone sufficient to demonstrate each element of the offense. ***See Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018) (holding "that the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony … addresses … every element of the charged crime"). Nevertheless, the Commonwealth also provided a second eyewitness, and its photographic evidence showed some

injury (redness) to corroborate their testimony. That the photographic evidence did not depict injuries that Appellant expected to result from strangulation is irrelevant to the sufficiency of the evidence supporting his conviction for that offense.

Appellant additionally argues, under the rubric of his first claim, that the trial court erred or abused its discretion in finding credible Complainant's and Witness's testimony, while finding his testimony not credible. **See** Appellant's Brief at 10. This aspect of Appellant's issue speaks to the weight of the evidence, not its sufficiency.

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; **Commonwealth v. Priest**, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. **Commonwealth v. Sherwood**, … 982 A.2d 483, 494 ([Pa.] 2009).

**Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012).

Here, Appellant does not direct this Court's attention to where in the record that he preserved a weight-of-the-evidence claim. Our review of the record indicates that he did not preserve any weight-of-the-evidence claims in a pre- or post-sentence motion,[2] and there is no sentencing transcript in

---

[2] In Appellant's post-sentence motion, he only sought relief in the form of reconsideration of his sentence.

the certified record.[3] Accordingly, Appellant waived this aspect of his first claim for our review.

In his second issue, Appellant asserts that the Commonwealth's testimonial evidence "was so rife with inconsistencies and opposing propositions that the trial court erred in finding him guilty beyond a reasonable doubt." Appellant's Brief at 11. Appellant asserts that the "most glaring inconsistency" is an apparent conflict between the testimony of Officer Banach and Complainant. *Id.* Appellant points out that Complainant testified that Appellant was still on top of her when the police came through the door, whereas Officer Banach testified that Complainant was by the door when he entered. *Id.* at 11-12. Appellant baldly alleges that this was only "one of many inconsistencies," but does not explain what the other inconsistencies were. *Id.* at 12. Nevertheless, Appellant contends that this ostensible conflict in testimony undermined Complainant's credibility, and resulted in "a scenario where we have two clearly opposing propositions," *id.*, in contravention of our Supreme Court's declaration in *Commonwealth v. Woong Knee New*, 47 A.2d 450, 468 (Pa. 1946), that "[w]hen a party on whom rests the burden of proof … offers evidence consistent with two opposing propositions, he proves neither[.]"

---

[3] "[I]t is an appellant's burden to ensure that the certified record contains the documents reflecting the facts needed for review." *Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007).

Appellant's second claim appears to be another assertion that the verdict was against the weight of the evidence. *See Commonwealth v. Galloway*, 434 A.2d 1220, 1222 (Pa. 1981) (stating that "[v]ariances in testimony" go to the weight "and not the sufficiency of the evidence"); *and see Commonwealth v. Lyons*, 833 A.2d 245, 259 (Pa. Super. 2003) ("Where evidence conflicts, it is the sole province of the fact finder to determine credibility and to believe all, part or none of the evidence."). As such, Appellant waived this claim because it was not raised for the first time in the trial court in accordance with *Lofton*, *supra*.

However, even if this claim speaks to the sufficiency of the evidence,[4] Appellant is not entitled to relief. As discussed above, both Complainant and Witness testified that Appellant choked Complainant to the point where she temporarily lost consciousness, and marks on her neck corroborated their testimony. Officer Banach's testimony did not contradict their testimony as to whether the assault occurred. As the Commonwealth explains,

> [o]n direct examination, when asked by the Commonwealth what happened when [Complainant] and [Appellant] were tussling by the chair, [Complainant] testified:
>
>> The cops – he was still on me, he was on me and the baby. The cops started kicking on the door, my daughter was still in there and she called the police. They heard us yelling, they heard us tussling and they were like banging on the door. Like I had to yell at my daughter get the door, it's the cops. She opened the door. The cops came in and they

---

[4] In *Commonwealth v. Suggs*, 432 A.2d 1042, 1050 (Pa. Super. 1981), this court suggested that claims premised upon *Woong Knee New* sound in sufficiency.

> pulled their tasers out. I was able to start to move to get from under him but not have the baby. So[,] I just jumped in front of them and said please don't shoot.

[N.T. Trial, 2/1/19, at 21]. During Officer Banach's testimony, he described the following:

> I, … and my partner, immediately went to the room where we heard screaming, knocked on the door and announced that we were the police, and … [C]omplainant's little girl let us in. When we got in[,] we saw [Appellant] … and we couldn't see his hands. The mom was over by us, by the door. We told [Appellant] multiple times to let us see your hands, but he wasn't showing us…. As soon as we pulled out our tasers, [Complainant] said don't tase him, he is holding my baby.

[***Id.*** at 57]. [Appellant] asserts that [Complainant]'s testimony presents the proposition that there was an active fight occurring, whilst Officer Banach's testimony alludes to, "at worst, a verbal altercation[.]" [Appellant's Brief at 12]. [Appellant] concludes that this inconsistency should call into question the credibility of [C]omplainant's testimony, because [Appellant] could only land on this conclusion by cherry picking through the presented evidence. As the trial court explained in its opinion, the highlighted testimony does not present "opposing propositions," rather similar accounts with slight deviations regarding one action and when it occurred. [TCO at 5].

Commonwealth's Brief at 12-13.

We agree with the trial court and the Commonwealth. Appellant exaggerates deviations in Complainant's and Officer Banach's testimony about the precise situation when the police came through the door, deviations that do not amount to mutually exclusive accounts of the same event. Importantly, Witness and Complainant provided direct, eyewitness accounts of Appellant's strangling of Complainant.

By contrast,

- 9 -

[i]n ***Woong Knee*** [***New***], the conviction was based entirely on evidence which placed [the] defendant with the victim at the victim's home shortly before the victim was there murdered. There was, however, **no evidence which tended to prove that the defendant had committed the crime**[], or which cast doubt on the equally likely possibility that an unknown assailant had killed the victim after the defendant had left his company. In reversing the conviction[,] we noted that:

> When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty.

[]***Woong Knee New***, … 47 A.2d at 468.

***Commonwealth v. Hubbard***, 372 A.2d 687, 691–92 (Pa. 1977) (emphasis added), *overruled on unrelated grounds*, ***Commonwealth v. Grant***, 813 A.2d 726 (Pa. 2002).

Thus, ***Woong Knee New*** is clearly distinguishable, as there was **no** direct eyewitness testimony concerning the murder in that case, whereas the verdict in this case was directly supported by the testimony of two eyewitnesses. Accordingly, even if this argument were not waived as a weight-of-the-evidence claim, Appellant would not be entitled to relief under ***Woong Knee New***.

Finally, Appellant contends that his trial attorney, John Lopez, Esquire, provided ineffective assistance of counsel (IAC) by "fail[ing] to adequately investigate exculpatory evidence, fail[ing] to investigate the ongoing threats and harassment from … [C]omplainant to … Appellant, and fail[ing] to investigate potentially exculpatory witnesses who were familiar with the

threats…." Appellant's Brief at 12. Appellant acknowledges that IAC claims are typically reserved for collateral review, but nevertheless maintains that his IAC claims are apparent from the existing record without further factfinding.

The trial court disagreed and, consequently, it declined to address Appellant's IAC claims on their merits in its Rule 1925(a) opinion. TCO at 6-7. Instead, the court found that Attorney Lopez's alleged ineffectiveness is not immediately apparent from the record and, therefore, "should not be handled on direct appeal because additional facts are needed." *Id.* at 7.

We agree with the trial court that Appellant's IAC claims should be deferred for collateral review.

> [I]n **Commonwealth v. Holmes**, … 79 A.3d 562 ([Pa.] 2013), the Pennsylvania Supreme Court … held that, absent either good cause or exceptional circumstances **and** a waiver of PCRA[5] review, ineffective assistance of counsel claims must await collateral review. The **Holmes** Court provided that exceptional circumstances could exist where "a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted." **Holmes**, **supra** at 577.

**Commonwealth v. Britt**, 83 A.3d 198, 203–04 (Pa. Super. 2013) (citation omitted) (emphasis added).

Appellant has neither demonstrated good cause nor exceptional circumstances in this case. Additionally, there is no record of Appellant's waiver of PCRA review. Accordingly, like the appellant in **Britt**, Appellant is

---

[5] Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*.

- 11 -

not entitled to review of his IAC claims on direct appeal and, thus, the trial court did not abuse its discretion or otherwise err in declining to address those issues.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2022