## Commonwealth of Pennsylvania *v.* Ezra H. Light, Appellant.

*Criminal law—Crime of receiving defined.*

A mere unexecuted agreement, entered into subsequently to a larceny, to receive, some time in the future, goods which are known to have been stolen is not sufficient to constitute the crime of receiving stolen goods; in order to sustain a conviction for that offense there must be actual or potential possession of the goods by the receiver.

*Charge of court—Designating incriminating facts—Effect of designation on review.*

If the trial judge in his charge designates the facts necessary to be found by the jury in order to justify a conviction of the offense charged in the

indictment the appellate court will decide whether the conviction was justified upon the facts set forth in the instructions, without considering the evidence.

*It seems* that even if the disputed facts, stated in the instructions, taken in connection with other facts which were admitted by defendant, made out a case which would warrant a jury in finding the defendant guilty of the crime with which he was charged, the justification of the conviction must be measured by the facts stated in the charge.

*Appeals—Defective assignment—Rule of court.*

A specification of error offends against Rule 15, where it mingles the charge of the court and a ruling upon the rejection of evidence, and such specification cannot be considered.

Argued Oct. 25, 1898. Appeal, No. 146, Oct. T., 1898, by defendant, from sentence of Q. S. Lebanon Co., Dec. Sess., 1897, No. 55, on verdict of guilty. Before Rice, P. J., Reeder, Orlady, W. W. Porter and W. D. Porter, JJ. Reversed. Opinion by W. D. Porter, J. Dissenting opinion by Rice, P. J. Smith, J., concurring in dissent.

Indictment for larceny and receiving stolen goods. Before Ehrgood, P. J.

It appears from the record that Ezra H. Light and Levi Sholl were jointly indicted for the larceny of five turkeys. The indictment also contained a second count against Light for receiving stolen goods, knowing them to have been stolen. Sholl plead guilty of larceny on the first count and Light was convicted on the second count and was acquitted on the first. The defendant in his testimony admitted that the turkeys were conveyed in his buggy to the place where they were sold; that he drove the buggy and was present when they were sold; that he knew where they came from or that they were stolen, or that he participated in the proceeds of the sale was denied; also that he took part in the stealing. ·

Mr. Funck, counsel for the commonwealth, having asked the court to " say a word as to the second count of the indictment," the court charged the jury on that point as follows:

[If you find that the defendant did not help to steal these turkeys, but that on the way into town or at any time between the time that they took these turkeys to the buggy and the time they disposed of them Sholl informed Light that these were

stolen turkeys and that then Light, the defendant, agreed that he would participate in the sale, go with him and participate in the sale, and that he was to participate in the profits of it, then you might find him guilty on the second count. Gentlemen, you say nothing about the costs. The defendants, Sholl and Light, were indicted jointly, and Sholl, one of the defendants, has plead guilty, that carries the costs with it. Exception to the defendant to the charge.] [1]

Verdict of guilty on the second count of the indictment and not guilty on the first count and sentence thereon. Defendant appealed.

*Errors assigned* were (1) to portion of the judge's charge, reciting same. (2) In the charge of the court as misguiding the jury, saying : " There has been some evidence introduced in the case that was objected to by the commonwealth and we would have ruled it out but it has been commented on, and that is to the charges made against this defendant before this time. That evidence was so far as the righteousness of the verdict was concerned, or as to the conviction, and probably should not have been introduced in this case." John K. Light, recalled by Mr. Capp : " Q. John you have on two former occasions in this court sworn that you saw Ezra Light steal a turkey, did you not ? " Mr. Capp : I propose to prove by this witness, on cross-examination, for the purpose of showing his bias, that he has sworn, in this court, on two separate occasions that from his premises he saw the defendant, Ezra Light, steal a turkey from the public highway; for the purpose of showing the improbability of the present story in this and having the jury infer that Ezra H. Light, after having had the experience of having this man on two separate occasions swear that he had stolen a turkey from the public highway in the broad open light of the day, would be more guarded, and would not commit such a foolish act, for the purpose of showing the improbability of the story. Mr. Funck : Objected to on the ground of incompetency. By the Court : Objection sustained ; exception to the defendant. Mr. Capp : We propose to prove by this witness for the purpose of showing his bias, that he has on two former occasions testified in this court that he has seen this defendant steal a turkey from the public highway in the broad open light of the day, and

that this he saw from his premises.  Mr. Funck: Objected to on the ground of its incompetency.  By the Court: Objection sustained.  Mr. Funck: I withdraw the objections.  By the Court: You withdraw your objection?  Mr. Funck: Yes, sir, I am willing to do that.  Q. You may answer the question. A. No, I didn't swear that.  I swore since that he fetched one from my premises but not from the street."

*Thomas H. Capp,* with him *George B. Schock,* for appellant. —What right had the court to submit to the jury an agreement between Sholl and the appellant whereby the appellant was to participate in the sale or in the profits of the sale without any evidence in support of it?  No such agreement is anywhere testified to or even hinted at during the course of the whole trial.

No witness for the commonwealth spoke of it, appellant was not asked about it and had no chance to deny it, yet the court submitted the question of its existence to the jury.  Mr. Justice GREEN, in Ulrich v. Arnold, 120 Pa. 170, concludes the opinion of the court in these forceful words, " As it is error to submit a question of which there is no evidence, the assignments of error are all sustained."

Did not the court submit to the jury the question, whether a conversation containing guilty information had taken place between Sholl and appellant, and the question whether defendant agreed with Sholl to " participate in the sale," and also, " to participate in the profits," when no scintilla of evidence had been adduced to establish such conversation or agreement?  If so, it is error: Ulrich v. Arnold, 120 Pa. 170; P., W. & B. R. R. Co. v. Alvord, 128 Pa. 42; Humphrey v. Cooper, 183 Pa. 432.

Mr. Justice WILLIAMS in Stall v. Meek, 70 Pa. 181, says: " The case should have been submitted to the jury upon instructions applicable to the evidence, and not upon instructions applicable to a state of facts, which the evidence did not tend to establish."

Mr. Justice PAXSON says in Steinbrunner v. Railway Co., 146 Pa. 514, in speaking of an erroneous statement, " We cannot say what influence it had with the jury. "

*J. M. Funck,* with him *J. M. Shindel,* district attorney, and

*A. Frank Seltzer*, for appellee.—It is not denied by the appellant that Light accompanied Sholl to the city of Lebanon upon the day when the stolen turkeys were disposed of; nor that subsequently, on the same day, in the city of Lebanon, Light and Sholl occupied a buggy containing these same turkeys; nor that Light was present with Sholl when the latter sold them and received the money.

Now, then, if this was in fact stolen property as is conceded, the possession by Light of the turkeys in the buggy and his presence at their sale was sufficient in law from which to infer a guilty knowledge. Assuming, then, as the court did, that Light had no connection with the actual stealing, was it not quite proper to refer to this question of guilty knowledge, and to submit for the determination of the jury whether, in their intimate intercourse during that day, the fact of the theft had not been communicated by Sholl to Light? Whether "between the time these turkeys were taken to the buggy and the time they disposed of them, Sholl informed Light that these were stolen turkeys?"

Again, what error was committed by referring the question to the jury whether "Light, the defendant, agreed that he would participate in the sale, go with him and participate in the sale, and whether he was to participate in the profits?"

The question for the jury to determine was that of guilty knowledge.

Light's presence at the sale in company with Sholl, the self-confessed thief; their mutual possession of the stolen turkeys only a day after the theft; the use of Light's buggy in carrying them to the place of sale; were sufficient from which to infer all the elements contained in the above proposition, and having thus inferred, it would show Light's guilty knowledge.

OPINION BY W. D. PORTER, March 23, 1899:

The defendant was tried upon an indictment containing two counts in which he was charged, jointly with Levi Sholl, in the first count, with larceny, and in the second count with receiving stolen goods, knowing them to have been stolen. The appellant was acquitted upon the first count, but convicted upon the second.

The first specification of error relates to the charge of the

court, as to the elements necessary to constitute the offense charged in the second count of the indictment. The language of the court which is the subject of the complaint was as follows: "If you find that the defendant did not help to steal these turkeys, but that on the way into town, or at any time between the time that they took these turkeys to the buggy and the time they disposed of them, Sholl informed Light that these were stolen turkeys, and that then Light, the defendant, agreed that he would participate in the sale, go with him and participate in the sale, and that he was to participate in the profits of it, then you might find him guilty of the second count." This constituted the entire instruction given by the court to the jury, as to what facts it was necessary for them to find in order to justify a verdict of guilty, upon a count charging the receiver of stolen goods knowing them to have been stolen. We must, therefore, decide whether the conviction was justified upon the facts set forth in the instruction, without considering other evidence. It must be assumed that the jury found the defendant guilty of receiving stolen goods, knowing them to have been stolen, upon the following state of facts, viz: Light being in company with Sholl, who has in his possession certain turkeys, is informed by Sholl that the turkeys are stolen property, and Light agrees to go with Sholl and participate in the sale of the turkeys and in the profits of said sale. Can the conviction be sustained upon this state of facts? It must be observed that the instruction did not make it the duty of the jury to consider anything which was done or any circumstances connected with the transaction subsequently to the making of the agreement. The jury did not pass upon the question whether the defendant ever took any steps to carry his agreement into execution. A mere unexecuted agreement, entered into subsequently to the larceny, to receive, some time in the future, goods which are known to have been stolen, is not sufficient to constitute the crime of which this appellant was convicted. The party might refuse to carry out his agreement and decline to receive the goods. There was a locus penitentia, of which the instructions here assigned for error would deprive him: Com. v. Sheriff, 3 Brewster, 342. The intention of the parties might be defeated by some independent agency and the offense not be consummated: The Queen v. Hill, 1 Denison's Crown Cases, 453; 61 English Common Law, 978.

But even if the agreement, recited in the instructions, had been carried out, and the appellant had participated in the sale and received from the thief a part of the proceeds, he might still not be guilty of the offense of which he was convicted. He would undoubtedly be guilty as an accessory after the fact to the larceny, but whether he was guilty of receiving stolen goods would depend upon other circumstances, the consideration of which the instructions withdrew from the jury. Under the instructions the jury were not required to pass upon the question of the custody or control of the goods by the defendant.

In order to sustain a conviction of the offense of receiving stolen goods, there must be an actual or potential possession of the goods by the receiver. If the property comes under the control of the receiver it is not necessary that the possession be manual; it is sufficient if he has control of the custodian, as if the receiving be by a servant, by direction of his master: Huggins v. State, 41 Alabama, 393; Regina v. Miller, 6 Cox's Crim. Law Cases, 353. If the receiver has obtained absolute control over the property in the hands of the thief, so that the goods will be forthcoming if he so order, and the receiver arrange to have the goods delivered in his presence to the agent of the owner for a reward and they are so delivered, the evidence of possession and control has been held sufficient to justify the submission of that question to the jury: Regina v. Thomas Smith, 6 Cox's C. L. 554. In that case the jury found that the property was under the absolute control of the accused. If the accused has not had possession of the property and has not had control over the custodian, where the exclusive possession remains in the thieves, there can be no conviction of receiving: The Queen v. Wiley, 2 Denison's Crown Cases, 37. The receiving of something for which the stolen property was exchanged, or the proceeds of its sale, will not support the charge of receiving stolen goods: United States v. Montgomery, 3 Sawyer, 544; King v. Walkley, 4 Carrington & Payne, 132. In every case of this character it is essential that the jury pass upon the question of the possession or control of the stolen property by the accused. The first assignment of error is sustained.

The second specification of error offends against Rule XV., in that it mingles the charge of the court and a ruling upon the rejection of evidence, and cannot be considered.

The first assignment of error being well founded, the record must be returned to the court below to the end that the appellant be retried upon the second count of the indictment.

Judgment reversed and venire facias de novo awarded.

RICE, P. J., dissenting:

The instruction complained of in the first assignment of error if intended as an abstract statement of the essentials to a conviction of one accused of the crime of receiving stolen goods, knowing them to have been stolen would be subject to criticism as is well shown in the opinion of Judge PORTER, but it was evidently not so intended; it was rather a statement of facts in dispute which the jury would have to find before they could convict the defendant in this particular case. The instruction is to be viewed and its effect determined, in the light of the fact sworn to by the defendant himself, that the turkeys were conveyed in the defendant's buggy, to the place where they were sold, and that he drove, and the other undisputed fact that he was present when they were sold. If there were any dispute as to these facts, the instruction might be criticised, but viewing it in the light of these undisputed facts, it does not seem to me that it was either inadequate or misleading. There is no room for conjecture even, that the corrupt bargain, if made, was unexecuted, or that the turkeys were not in the defendant's actual possession, and control, when he drove the wagon in which they were, to the place where the corrupt bargain was consummated by the sale of the stolen property.

In the case of The Queen v. Wiley, the conclusion of the majority of the judges that the conviction was wrong, was based largely upon the point thus stated by Lord COLERIDGE: "Until some bargain had been concluded, he" (the receiver) "never intended to take charge of it, nor in fact could he have taken possession. This therefore is not the case of a joint constructive possession; nor did the thieves intend to admit him to any actual possession except upon a bargain which was never made." Here however the verdict of the jury has established the fact that the bargain was made, and this being so, the defendant must be deemed in possession pursuant to it when he conveyed the stolen property to the place where it was disposed of. In short, the facts stated in the instruction taken in con-

nection with the facts admitted by the defendant made out a case, which in my opinion would warrant a jury in finding the defendant guilty of the crime of receiving.

This is the entire effect of the instruction, and thus viewed, I do not think it was erroneous.

SMITH, J., concurs in this dissent.