560 A.2d 802

**COMMONWEALTH of Pennsylvania**

v.

**Duane E. BRADY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 31, 1989.

Filed June 21, 1989.

Nancy A. Patterson, New Bloomfield, for appellant.

Gloria J. McPherson, Assistant District Attorney, Shermans Dale, for Com., appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

WIEAND, Judge:

Duane E. Brady, a juvenile, was tried as an adult on charges of burglary, theft by receiving stolen property, and criminal conspiracy. At trial, the Commonwealth produced evidence which showed that on the afternoon of August 5, 1986, Brady sat in a car while the driver of the vehicle, Frederick J. Miller, left the vehicle, entered a residential dwelling through a window, removed items of property which included stereo equipment, a rifle, a shotgun, and a chain saw, and placed them in the trunk of the car. There was no evidence that Brady had exited the car or assisted Miller during these events. Later, during the evening of the same day, Brady was a passenger in the back seat of the same vehicle when Donald Miller,[1] an informant, drove

---

1. Donald Miller was the owner of the vehicle. He and Fred Miller are not related by blood or marriage.

Fred Miller to a Mini–Mart where some of the stolen property was sold by Fred Miller to an undercover state trooper. After Fred Miller had sold the rifle and shotgun to the undercover state trooper for one hundred ($100.00) dollars, Miller gave Brady sixty ($60.00) dollars in repayment of a debt owed by Miller to Brady. On this evidence a jury found Brady guilty of burglary, theft by receiving stolen property, and conspiracy to commit theft by receiving stolen property.[2] The jury found Brady not guilty of conspiracy to commit burglary. A post-trial motion in arrest of judgment was denied, and Brady was sentenced to serve a term of imprisonment. On direct appeal, Brady contends that the Commonwealth's evidence was insufficient to show that he had participated in any culpable way in the offenses committed by Fred Miller.[3] We are constrained to agree.

"To sustain a conviction, the facts and circumstances which the Commonwealth prove must be such that every essential element of the crime is established beyond a reasonable doubt. Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in the proper case rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture." *Commonwealth v. Roscioli*, 454 Pa. 59, 62, 309 A.2d 396, 398 (1973) (footnotes omitted). See also: *Commonwealth v. Fields*, 460 Pa. 316, 333 A.2d 745 (1975); *Commonwealth v. Bailey*, 448 Pa. 224, 292 A.2d 345 (1972); *Commonwealth v. Weaver*, 309 Pa.Super. 509, 455 A.2d 1199 (1982). However, in conducting appellate review to determine the sufficiency of the evidence we must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Common-*

2. The defense offered no evidence and rested upon completion of the Commonwealth's case.

3. Fred Miller entered pleas of guilty to charges arising out of the events of August 5, 1986.

*wealth v. Jackson,* 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984). Additionally, "[w]hen conflicts and discrepancies arise, it is within the province of the jury to determine the weight to be given each testimony and to believe all, part, or none of the evidence as they deem appropriate." *Commonwealth v. Verdekal,* 351 Pa.Super. 412, 419–420, 506 A.2d 415, 419 (1986). See also: *Commonwealth v. Rose,* 463 Pa. 264, 344 A.2d 824 (1975).

The only testimony about the burglary came from Fred Miller. He testified as follows:

Q. Did anyone go with you to that home?

A. Not inside the premises.

Q. How did you get there?

A. I drove up in a Fleetwood Cadillac.

Q. Was anyone with you in the car?

A. Yes, Duane Brady.

Q. The defendant here today?

A. Yes.

Q. He was in the car?

A. Yes.

Q. Did he know what you were planning to do?

A. I believe so.

Q. Why do you think he knew what you were planning to do?

A. I went in through a window. I came out with stereo equipment and some guns and I placed them in the trunk of the car.

Q. Did you come out the window?

A. No, I came out the basement door.

Q. What did you bring out of the house?

A. A shotgun, a rifle, stereo equipment ... let me think ... a VCR, and—I can't think of the name of the thing. It's used for—A Satellite decoder.

Q. Did Duane Brady see the things that you brought out of the house?

A. Yes.

284 

Q. And you put them in the car where Duane Brady was?

A. Yes.

Q. The window that you went in, how did you get in?

A. I knocked the screen out and I went through. The window was already open.

Q. Did you know the people that lived there?

A. No.

Q. Did you have permission to enter the house?

A. No.

Q. Did you discuss it with Duane Brady before you went up?

A. ... Yes.

Q. Did you tell him what you were going to do?

A. More or less. He knew I didn't live there.

He also testified on cross-examination as follows:

Q. Did [Brady] participate in any way in the burglary?

A. No, he did not. He never got out of the car at all if I remember correctly.

Q. He was simply along with you?

A. Yes.

██ This testimony failed to establish that appellant had entered the residence with an intent to commit a crime therein. In order to establish appellant's guilt, therefore, it was essential for the Commonwealth to prove that appellant was an accomplice of Fred Miller in the commission of the burglary. An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Carey,* 293 Pa.Super. 359, 373, 439 A.2d 151, 158 (1981). See: 18 Pa.C.S. § 306. See also: *Commonwealth v. Jones,* 213 Pa.Super. 504, 508, 247 A.2d 624, 626 (1968). To be an accomplice, "one must be an active partner in the intent to commit [the crime]." *Commonwealth v. Fields, supra* 460 Pa. at 319–320, 333 A.2d at 747; *Commonwealth v. McFadden,* 448 Pa. 146, 150, 292 A.2d 358, 360 (1972). "An [accomplice] must have done something to participate in the venture." *Commonwealth*

*v. Flowers,* 479 Pa. 153, 156, 387 A.2d 1268, 1270 (1978). "[A] showing of mere presence at the scene of a crime is insufficient to support a conviction: evidence indicating participation in the crime is required." *Commonwealth v. Keblitis,* 500 Pa. 321, 324, 456 A.2d 149, 151 (1983). See also: *Commonwealth v. Smith,* 490 Pa. 374, 416 A.2d 517 (1980); *Commonwealth v. Blankenbiller,* 362 Pa.Super. 477, 524 A.2d 976 (1987); *Commonwealth v. Johnson,* 355 Pa.Super. 372, 513 A.2d 476 (1986). "Even presence at the scene of a crime in the company of its perpetrator has been held to be insufficient to sustain a conviction." *In re Hawthorne,* 374 Pa.Super. 104, 107, 542 A.2d 167, 169 (1988). See also: *Commonwealth v. Roscioli, supra* 454 Pa. at 63–64, 309 A.2d at 399; *Commonwealth v. Garrett,* 423 Pa. 8, 12–13, 222 A.2d 902, 905 (1966); *In re Amos,* 287 Pa.Super. 446, 449, 430 A.2d 688, 690 (1981).

 In the instant case, the Commonwealth's evidence showed only that appellant had been present in a car when the driver stopped the car, broke into a home, and removed personal property. There was no evidence that appellant had agreed to aid or did in fact aid Miller in the commission of the burglary. We know only that appellant was present in the car.

The Commonwealth argues that a jury could infer that Miller, when called as a Commonwealth witness, was protecting Brady and that he testified untruthfully when he said that appellant had merely remained in the car. We reject this argument. Although the jury could certainly disbelieve Miller's testimony, it could not find appellant guilty in the absence of evidence showing participation. The only testimony which the Commonwealth offered regarding appellant's presence was the testimony of Fred Miller. Therefore, when Miller failed to implicate appellant there was no other evidence upon which the jury could rely. A finding that Miller was not credible did not support an affirmative inference that appellant was guilty. To convict, evidence of participation was necessary.

The Commonwealth argues in the alternative that the jury could have found that appellant was acting as a "look out" while Fred Miller entered the home. It contends that it would be unreasonable to assume that appellant "did not assist his friend at least by acting as lookout while Miller was inside the house during daylight hours at a time when the residents could soon be returning home from work or school." There is no evidence, however, from which it can be found that appellant agreed to act or did act as look out. Nothing more has been shown than that appellant was present. This was insufficient to show that appellant was an accomplice. *Commonwealth v. Henderson*, 249 Pa.Super. 472, 482–483, 378 A.2d 393, 398 (1977). See also: *Commonwealth v. Everett*, 297 Pa.Super. 320, 327, 443 A.2d 1142, 1145 (1982).

> "[T]he mere fact that a person is present at the scene of a crime but does not in any way participate in or encourage its commission does not make him a principal even in the second degree. Hence, although a man is present while a felony is committed, yet if he takes no part in it, and does not act in concert with those who commit it, he will not be a principal in the second degree merely because he does not endeavor to prevent the felony or apprehend the felon.
>
> "The fact that the witness may approve the commission of the crime does not make him a principal if he had not in any way manifested to the criminals that the shares their purpose and is acting with them. Something must be shown in the conduct of the bystander which indicates a design to encourage, incite or in some manner afford aid or consent to the particular act."

*Commonwealth v. Roscioli, supra* 454 Pa. at 64–65 n. 5, 309 A.2d at 399 n. 5, quoting 1 Wharton's Criminal Law and Procedure, § 108 (1957). See also: *Commonwealth v. Johnson, supra* 355 Pa.Super. at 375–376, 513 A.2d at 478 ("We cannot ... convict a man who did not actively participate, but merely watched as the crime took place."). In the instant case, the Commonwealth was able to prove no more

than that appellant was present and that he knew Miller was committing a burglary. This was insufficient to support appellant's conviction of burglary.

To convict appellant of theft by receiving stolen property, the Commonwealth was required to prove beyond a reasonable doubt (1) that the property which Fred Miller had removed from the residential dwelling had been stolen; (2) that appellant received, retained or disposed of such property; and (3) that he knew or had reason to believe that the property in question was stolen. See: 18 Pa.C.S. § 3925; *Commonwealth v. Deemer*, 316 Pa.Super. 28, 32, 462 A.2d 776, 778 (1983). See also: *Commonwealth v. Peluso*, 481 Pa. 641, 393 A.2d 344 (1978); *Commonwealth v. Jerry*, 323 Pa.Super. 299, 470 A.2d 601 (1983); *Commonwealth v. Grabowski*, 306 Pa.Super. 483, 452 A.2d 827 (1982). Here, it is clear that the property had been stolen and that appellant knew it had been stolen. To establish that appellant received or possessed the stolen property it was sufficient to show that appellant had joint or constructive possession of it. See: *Commonwealth v. Stasiak*, 305 Pa.Super. 257, 451 A.2d 520 (1982); *Commonwealth v. Breslin*, 194 Pa.Super. 83, 165 A.2d 415 (1960). Where the Commonwealth proceeds under a theory of joint or constructive possession, however, it must establish that the accused exercised conscious control or dominion over the stolen property. *Commonwealth v. Scudder*, 490 Pa. 415, 419 n. 2, 416 A.2d 1003, 1005 n. 2 (1980). See also: *Commonwealth v. Davis*, 444 Pa. 11, 15, 280 A.2d 119, 121 (1971) (absent literal possession, a defendant may be deemed to be in possession of stolen property only when it is proved that he exercised conscious control or dominion over such property). The Commonwealth could also establish guilt by showing that appellant was an accomplice of Miller in the disposition of the stolen property. See: 18 Pa.C.S. § 306.

The Commonwealth does not contend that appellant was guilty of receiving stolen property because he received sixty ($60.00) dollars from the proceeds realized by Miller

upon sale of the stolen guns. The receipt of proceeds from the sale of stolen property will not alone support a charge of theft by receiving stolen property. See: 76 C.J.S., Receiving Stolen Goods § 5(a)(3); Wharton's Criminal Law, Volume IV, § 458 at p. 21 (14th ed. 1981); *Commonwealth v. Light,* 10 Pa.Super. 66, 72 (1899), *affirmed,* 195 Pa. 220, 45 A. 933 (1900) ("The receiving of something for which the stolen property was exchanged, or the proceeds of its sale, will not support the charge of receiving stolen goods."); *Commonwealth v. Riley,* 13 Pa.Dist. 669, 670, 30 Pa.Co. 316, 318 (1904) (same). It is the receipt, disposition, or possession of the stolen property which constitutes the offense of receiving stolen property.

■ The paucity of evidence in this case leads us inevitably to the conclusion that the Commonwealth failed to prove that appellant ever received or had possession of the stolen property. Although appellant was again present in Donald Miller's car when Fred Miller attempted to dispose of the stolen property, appellant's role, if any, was not explained. The evidence does not show what, if anything, occurred between the time of the burglary and Fred Miller's attempt to sell the stolen property to an undercover state trooper. Neither does it show that the stolen property was ever subject to appellant's control. The evidence did not show that appellant had helped to place the stolen property in the trunk of Miller's car or that he had helped to remove it. Indeed, the evidence does not show that appellant had ever touched the stolen property or that he had ever driven or otherwise controlled the car in which Fred Miller had placed the stolen property. The arrangements for Fred Miller to meet the undercover policeman had been made by Donald Miller. There was no evidence that appellant had aided therein or that he had participated in any way in the negotiations between Miller and the undercover policeman for the sale of the stolen property. During these negotiations, according to all the evidence, appellant remained seated in the rear of the car. Thus, according to the evidence, appellant was nothing more than a spectator who

was present but did not participate. This was insufficient to support a conviction for theft by receiving stolen property. See: *Commonwealth v. Scudder, supra* (fact that defendant was a passenger in a stolen van which had stolen property in the back, along with paint used for painting van's side windows, and that the operator attempted to avoid police, was insufficient to support defendant's conviction for receiving stolen property). Cf. *Commonwealth v. Armstead*, 452 Pa. 49, 51, 305 A.2d 1, 2 (1973) (mere presence in an automobile in which a weapon is found is not sufficient to prove that a defendant-passenger is in possession of the weapon); *Commonwealth v. Whitner*, 444 Pa. 556, 281 A.2d 870 (1971) (mere proximity to stolen goods insufficient to show possession as an element of larceny).[4]

For similar reasons, we hold that there was insufficient evidence to establish that appellant was part of a conspiracy to commit theft by receiving stolen property. While it is true that "a conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the confederate which demonstrate a unity of purpose to accomplish an unlawful act[,]" *Commonwealth v. Weaver, supra* 309 Pa.Super. at 513, 455 A.2d at 1201, "to prove criminal conspiracy circumstantially, 'the evidence must rise above mere suspicion....'" *Commonwealth v. Frey*, 264 Pa.Super. 212, 215, 399 A.2d 742, 743 (1979), quoting *Commonwealth v. Burdell*, 380 Pa. 43, 49, 110 A.2d 193, 197 (1955). "[P]roof of guilt on a charge of conspiracy fails if it shows only that the accused was present at the scene of the crime and knew of its commission." *Commonwealth v. Henderson, supra* 249 Pa.Super. at 483, 378 A.2d at 398. On the facts of the instant case, the Commonwealth proved nothing more than appellant's presence in an automobile with knowledge that stolen property was present in the trunk and that such property was going to be sold. The

**4.** We reject the Commonwealth's contention that appellant could be found guilty of theft by receiving stolen property because he remained silent and did not warn the undercover state trooper that the property being sold had been stolen. Although this was a relevant circumstance, it did not alone constitute the crime with which appellant had been charged.

Commonwealth did not show that appellant had agreed to participate or aid in the sale of the stolen property or that he had exercised the slightest degree of dominion or control over such property. This was insufficient to permit an inference that appellant was guilty of criminal conspiracy to receive, retain or dispose of the stolen property.

Thus, although appellant's presence at the times when the offenses were committed by Fred Miller was a suspicious circumstance, it was insufficient, without more, to support a finding that appellant had participated actively therein.

The judgment of sentence is reversed, and appellant is discharged.[5]

POPOVICH, J., files a dissenting statement.

POPOVICH, Judge, dissenting:

I dissent. I am convinced that the evidence presented was sufficient to sustain the appellant's conviction on the charge of theft by receiving stolen property.

Instantly, the record reveals that, at approximately 3:00 p.m., the appellant went with Frederick Miller to the Bateman home located down a back road in rural Perry County. After seeing Harry Bateman exit his house, the appellant, waiting inside Frederick Miller's car, watched as Miller entered the residence through a window. The appellant knew the residence was not Miller's home. The appellant witnessed Miller remove items of personal property, including a rifle and a shotgun, from the home and place them in the trunk of the car in which he was a passenger. Hours later during the evening of the same day, the appellant was

5. Appellant's remaining issues are without merit. At the transfer hearing, appellant, who was represented by counsel, did not oppose his transfer from juvenile to adult criminal court. In fact, during the hearing appellant stated: "Well, I might as well go ahead ... And be transferred, yes." (N.T. August 13, 1986 at p. 4). Under these circumstances, we will not find error on the part of the juvenile court for not fully explaining the reasons for appellant's transfer to adult court. See: 42 Pa.C.S. § 6355(c). We also find no basis for holding that appellant was denied the effective assistance of counsel at the transfer hearing.

present when Miller sold the stolen weapons to an undercover state trooper. Immediately thereafter, Miller gave $60.00 from the proceeds of the sale to the appellant in repayment of a debt.[1]

To sustain a conviction for receiving stolen property, the Commonwealth must prove beyond a reasonable doubt that: 1) the property was stolen; 2) the accused knew or had reason to believe the property was stolen; and 3) the accused received, retained or disposed of the property. 18 Pa.C.S.A. § 3925; *Commonwealth v. Deemer*, 316 Pa.Super. 28, 31, 462 A.2d 776, 778 (1983).

It is undisputed that the property was stolen and that the appellant knew the rifle and shotgun were stolen. Thus, the only question remaining is whether the appellant had joint or constructive possession of the property. See *Commonwealth v. Stasiak*, 305 Pa.Super. 257, 451 A.2d 520 (1982). Instantly, the appellant was not only present when the weapons were stolen but also was present at the sale of the guns. Significantly, the appellant, immediately after the sale of the stolen property, accepted $60.00 in proceeds from the sale.

The majority holds that "receipt of proceeds from the sale of stolen property will not alone support a charge of theft by receiving stolen property[,]" citing *Commonwealth v. Light*, 10 Pa.Super. 66, 72, *affirmed,* 195 Pa. 220, 45 A. 933 (1900). However, under the facts before us, I fail to discern the difference between the appellant having actually touched the stolen property even for a brief moment (an event which would have certainly sufficed to sustain the conviction), and the appellant's receipt of the proceeds immediately after the sale. In the case *sub judice,* I would hold that the appellant's receipt of the proceeds did in fact constitute constructive possession of the property and *ergo* was sufficient to support his conviction for receiving stolen

1. Immediately after the sale, Miller and the appellant were arrested. When the appellant was searched, three of the marked twenty dollar bills used in the purchase were found on the appellant's person.

292

property.[2]

Moreover, this appellant clearly was not a mere innocent bystander: He knew the property was stolen; he was present at the burglary; he was a passenger in the car where the stolen property was stored; he was present at the sale of the stolen property; and he knowingly accepted proceeds from the sale of the stolen property. While standing alone any one of those facts would not support a conviction, I believe that their amalgamation does support the conviction of the appellant on the charge of theft by receiving stolen property.

2. Moreover, "[i]f the property comes under the control of the receiver it is not necessary that the possession be manual; it is sufficient if he has control of the custodian, as if the receiving be by a servant, by direction of his master[.]" *Light,* 10 Pa.Super. at 72. Presently, the appellant had control over the custodian, Miller, to the extent that Miller owed the appellant $60.00.