J-A20045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JESSE JAMES TINSLEY, | : | |
| | : | |
| Appellant | : | No. 1776 WDA 2015 |

Appeal from the Judgment of Sentence May 18, 2015
in the Court of Common Pleas of Greene County,
Criminal Division, No(s): CP-30-CR-0000186-2014

BEFORE: BOWES, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 31, 2016**

Jesse James Tinsley ("Tinsley") appeals from the judgment of sentence imposed following his conviction of theft by unlawful taking, criminal conspiracy to commit theft, and tampering with or fabricating physical evidence.[1] We reverse and discharge Tinsley.

On April 6, 2014, Brian Yeager ("Yeager") saw a red truck with square headlights, possibly a 1982-era GMC, driving away from Levine's Iron & Metal around 11:00 p.m. *See* N.T., 3/3/15, at 33-34. Yeager testified that the truck did not have its lights on, left at a high rate of speed, and appeared to have scrap metal in the bed of the truck. *Id.* at 33-34, 39, 41-42, 45. After Yeager saw the truck head west, he returned inside and called the police. *Id.* at 34. Thereafter, Yeager called Larry Levine ("Levine"),

---

[1] 18 Pa.C.S.A. §§ 3921(a); 903(c); 4910(1).

owner of Levine's Iron & Metal, to tell Levine what he witnessed. *Id.* at 34-35, 96-97.

James Babirad ("Trooper Babirad"), a Pennsylvania State Trooper, reported to Yeager's call. *Id.* at 52-53. Trooper Babirad drove toward West Waynesburg to search for the reported truck, but did not locate the vehicle in that area. *Id.* at 53. As Trooper Babirad was returning to the police station, he noticed a truck that matched Yeager's description parked in front of a house. *Id.* at 54. Trooper Babirad noted some scrap metal in the bed of the truck before knocking on the door of the residence. *Id.* Rachel Eddy ("Eddy"), Tinsley's co-defendant,[2] answered the door and told Trooper Babirad she was the only person to drive the truck that day, and that she returned home around 10:00 p.m. *Id.* However, Trooper Babirad had not observed the truck parked at the house on his way into West Waynesburg approximately 15 minutes earlier. *Id.* at 55. After seeing several other people in the home, Trooper Babirad asked if Tinsley was home. *Id.* at 55, 84-85. Tinsley came to the door and confirmed that Eddy was the only person who drove the truck that day. *Id.* at 55-56. Trooper Babirad asked Tinsley and Eddy about the scrap metal in the truck and advised them of why he was asking about the scrap metal. *Id.* at 58.

Thereafter, Trooper Babirad told Tinsley and Eddy not to do anything with the scrap metal, and he returned to the police barracks to get a camera

---

[2] Tinsley and Eddy live together with Eddy's family. *See* N.T., 3/3/15, at 162.

in order to photograph the metal in the bed of the truck. *Id.* at 60. The police contacted Levine and asked him to come to Eddy and Tinsley's residence in order to view the scrap metal in person. *Id.* at 60, 97, 104-05. Trooper Babirad returned to the residence around 15 minutes later, but noticed that some of the scrap metal had been moved out of the bed of the truck, and a silver grate that had previously been in the truck was missing. *Id.* at 61, 87. After Tinsley showed Trooper Babirad where the missing silver grate was located in the basement, Trooper Babirad photographed all of the scrap metal, as well as the truck. *Id.* at 61-62, 77-78. Subsequently, Levine arrived at the residence to inspect the scrap metal. *Id.* at 69, 97-98. Although he does not keep an inventory of his scrap yard, Levine reported that the material in question appeared to be similar to scrap metal that was dropped off at his facility two days prior. *Id.* at 106, 112-13. Trooper Babirad told Tinsley and Eddy not to do anything with the scrap metal until it could be investigated further, and left for the night. *Id.* at 70.

After beginning his usual 4:00 p.m. shift the following day, Trooper Babirad noticed Tinsley driving the truck, with Eddy as a passenger, around 4:30 p.m. *Id.* at 70-71, 94. Trooper Babirad observed that none of the scrap metal was in the bed of the truck, so he turned around and met Tinsley and Eddy at their residence to speak with them. *Id.* at 71. Eddy notified Trooper Babirad that she took the scrap metal to a different scrap yard, Jack's Recycling, early that morning to get money. *Id.* at 72, 94.

Trooper Babirad called Jack's Recycling and confirmed Eddy's statement. *Id.* at 123. Trooper Babirad then met Levine at Levine's Iron & Metal, and Trooper Babirad took photos of a pile of scrap metal with pieces similar to those found at the Tinsley and Eddy residence. *Id.* at 73-76. Trooper Babirad also took photos of tire impressions in the mud located at Levine's Iron & Metal. *Id.* at 77. On April 9, 2014, Trooper Babirad went to Jack's Recycling and received a receipt showing that Eddy received $163.20 for the scrap metal she had dropped off two days prior. *Id.* at 131.

Tinsley was charged with theft, criminal conspiracy, and tampering with physical evidence. On March 3, 2015, a jury found Tinsley guilty on all three charges. The trial court sentenced Tinsley to an aggregate sentence of 3 to 23 months in jail, and imposed $246 in restitution. Tinsley filed a Post-Sentence Motion to Amend Sentence and a Motion for a New Trial. The trial court reduced the restitution amount to $163.20. However, the trial court denied the Motion for a New Trial and all other remaining claims in Tinsley's Post-Sentence Motion. Subsequently, Tinsley filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Tinsley raises the following issue for our review: "Did the trial court err in denying [Tinsley's] [P]ost-[S]entence [M]otions where the Commonwealth failed to present sufficient evidence of [t]heft by [u]nlawful [t]aking, [c]riminal [c]onspiracy, and [t]ampering with or [f]abricating [p]hysical [e]vidence?" Brief for Appellant at 7.

Our standard of review for a sufficiency of the evidence claim is as follows:

When presented with a claim that the evidence was insufficient to sustain a conviction, an appellate court, viewing all of the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact-finder to find that all elements of the offense were established beyond a reasonable doubt.

*Commonwealth v. Woody*, 939 A.2d 359, 361 (Pa. Super. 2007) (citation omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted).

Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in a proper case rely upon wholly circumstantial evidence, a conviction must be based upon more than mere suspicion or conjecture. Evidence of something more than mere presence at or near the scene of the crime is required to justify a conclusion that someone committed or participated in a crime. When evidence is as consistent with innocence as it is with guilt, a conviction may not stand.

*Commonwealth v. Key*, 492 A.2d 48, 49 (Pa. Super. 1985) (citations omitted).

Tinsley contends that the evidence was insufficient to support his convictions. *See* Brief for Appellant at 15-22. First, Tinsley argues that the evidence was insufficient to support his theft by unlawful taking conviction, as the Commonwealth failed to prove that he exercised any control over the

scrap metal. *Id.* at 16-19. Tinsley asserts that this is a case of mere presence, based on the lack of any evidence that he was in the truck on the night of the possible theft, that he touched the scrap metal, or that he sold the scrap metal. *Id.* at 16-18.

The Crimes Code defines theft by unlawful taking as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

> To establish that appellant … possessed the stolen property[,] it [is] sufficient to show that appellant had joint or constructive possession of it. Where the Commonwealth proceeds under a theory of joint or constructive possession, however, it must establish that the accused exercised conscious control or dominion over the stolen property. The Commonwealth could also establish guilt by showing that appellant was an accomplice … in the disposition of the stolen property.

*Commonwealth v. Brady*, 560 A.2d 802, 806 (Pa. Super. 1989) (citations omitted).

Viewing the evidence in a light most favorable to the Commonwealth, we conclude that the evidence is insufficient to demonstrate Tinsley exercised unlawful control over the scrap metal. The uncontroverted evidence suggests that Eddy was the only person who drove the truck on April 6, 2014. *See* N.T., 3/3/15, at 54, 56. There was no evidence placing Tinsley at the scrapyard or handling the scrap metal. Further, the Commonwealth did not demonstrate that the scrap metal stolen was the

same as the scrap metal found in the truck. Finally, there was also no evidence that Tinsley was an accomplice. Thus, the evidence was insufficient to support a conviction of theft by unlawful taking.

Tinsley next claims that the evidence did not prove that he had conspired to take another's property. *See* Brief for Appellant at 19-20. Tinsley argues that the Commonwealth only presented evidence of his association with Eddy. *Id.* at 20.

The Crimes Code defines criminal conspiracy as follows:

> **(a) Definition of conspiracy. –** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

18 Pa.C.S.A. § 903(a)(1).

> The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished. Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, *i.e.*, that the [a]ppellant was an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (citations and internal quotations omitted).

Viewing the evidence in a light most favorable to the Commonwealth, the evidence is insufficient to support the conspiracy to commit theft

conviction. There is no evidence of any agreement between Tinsley and Eddy. The fact that Tinsley and Eddy live together, and were seen in the truck together the following day, merely evidences their association. *See id.* Thus, the evidence is insufficient to support a conviction of criminal conspiracy to commit theft. *See Commonwealth v. Swerdlow*, 636 A.2d 1173, 1177-78 (Pa. Super. 1994) (concluding that evidence that appellant's alleged co-conspirator used a crawlspace in appellant's home to rob neighbors was insufficient to support conspiracy conviction, as there was no evidence that appellant agreed to participate or knew about the burglaries).

Finally, Tinsley asserts that the evidence was insufficient to prove that he tampered with physical evidence. *See* Brief for Appellant at 20-21.

A person is guilty of tampering with physical evidence "if, believing that an official proceeding or investigation is pending or about to be instituted, he … alters, destroys, conceals or removes any record, document or things with intent to impair its verity or availability in such proceeding or investigation." 18 Pa.C.S.A. § 4910(1).

Here, Trooper Babirad testified that he "just said sit tight" when he left to retrieve the camera. N.T., 3/3/15, at 60. Subsequently, Trooper Babirad testified that he "advised [Tinsley and Eddy] not to do anything with the scrap until [he had conducted] further investigation" before leaving the house at the end of the night. *Id.* at 70. Although Trooper Babirad is

uncertain of his "exact words" at certain points, he knows he "told [Tinsley and Eddy] there was an investigation." *Id.* at 86.

Assuming Tinsley knew the items were under investigation, the Commonwealth failed to prove that Tinsley participated in the alteration, destruction, concealment or removal of the scrap metal in attempt to impair its availability. *See* 18 Pa.C.S.A. § 4910. In point of fact, Eddy told Trooper Babirad that she took the metal to Jack's Recycling on the morning of April 7, 2014. N.T., 3/3/15, at 94, 122. There is no evidence that Tinsley assisted or knew about Eddy's actions. As such, the evidence of record is insufficient to support a conviction of tampering with physical evidence.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence is insufficient to support Tinsley's convictions. Thus, the judgment of sentence must be reversed, and Tinsley discharged.

Judgment of sentence reversed. Tinsley discharged. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2016