J-S21031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRONE LAWRENCE | : | |
| | : | |
| Appellant | : | No. 2117 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009682-2021

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 18, 2024**

Tyrone Lawrence (Appellant) appeals from the judgment of sentence entered following his conviction by a jury of one count each of first-degree murder and recklessly endangering another person (REAP).[1] After careful review, we affirm.

On April 8, 2020, Raheem Stoner (decedent) drove his black vehicle onto the 1500 block of Marshall Street in Philadelphia. He stopped his vehicle to inquire when the barber "was coming around." Trial Court Opinion, 10/27/23, at 3. The decedent exited his vehicle and began walking towards Earl Boone (Boone), who lived in the area. As decedent approached Boone,

> a black vehicle pulled up and a male dressed in black with a gun exited the vehicle from the backseat passenger side. He was wearing gloves and a paper hospital mask. The gun looked like a

_____

[1] **See** 18 Pa.C.S.A. §§ 2502, 2705.

MAC-10 (pistol/submachine gun) with an extended clip. Another male exited the driver's seat. The decedent ran back towards his car and the male with the gun began firing at the decedent. Boone ducked when he heard the shots....

*Id.* Boone subsequently told detectives that he saw Appellant

get out of the driver's seat and the other guy get out [of the rear passenger's seat] with a mask and everything on. Additionally, Boone told detectives that [Appellant] jumped back into the driver's seat of the car and drove off, while the shooter left the area on foot.

*Id.* Decedent died as a result of the shooting.

During the police investigation of the shooting, officers recovered twenty fired cartridge casings (FCCs), which were identified as 5.7 millimeter rifle rounds that could be used in a large handgun. *Id.* at 4. From nearby surveillance videos, Officer Joseph Goodwin identified Appellant as the man accompanying the shooter. *Id.* Police subsequently arrested Appellant.

On April 21, 2023, a jury convicted Appellant of the above-described crimes.[2] That same day the trial court sentenced Appellant to life in prison without parole. On April 30, 2023, Appellant filed a post-sentence motion, after which Appellant requested new counsel. The trial court appointed new counsel for Appellant on June 15, 2023. On August 14, 2023, the trial court denied Appellant's post sentence motion, after which Appellant timely appealed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

_____

[2] The jury acquitted Appellant of criminal conspiracy, 18 Pa.C.S.A. § 903.

Was the evidence insufficient as a matter of law to support [Appellant's] conviction for first-degree murder and recklessly endangering another person[,] where it only demonstrated that [Appellant] was merely present when someone else shot and killed [] decedent?

Appellant's Brief at 2.

Appellant argues that, "even taken in the light most favorable to the Commonwealth, [the] evidence does not demonstrate that [Appellant] was guilty as either a conspirator or as an accomplice." *Id.* at 12. Appellant points out he was acquitted of criminal conspiracy. Appellant's Brief at 13. He asserts,

[a]ll that was demonstrated in this case is that [Appellant] was briefly present with other people, one of whom interacted with [] decedent while he was in the car; that [Appellant] entered a car driven by a different person that followed [] decedent's car; and this person [(Azim Wright (Wright))] eventually jumped out of that car (which [Appellant] was then the driver of) and shot [] decedent….

*Id.* Appellant emphasizes he was not the "getaway driver." *Id.* According to Appellant, after the shooting, he "jumped back into the car and speeded away[,] leaving Wright to flee on foot." *Id.* At best, Appellant argues, the evidence established he was merely present at the scene and fled after the shooting. *Id.* Appellant asserts this evidence is not sufficient to sustain his conviction of first-degree murder. *Id.*

Appellant further argues the evidence failed to establish that he was Wright's accomplice. *Id.* at 14. Appellant compares the circumstances in this case to those deemed insufficient to establish a conspiracy in

- 3 -

*Commonwealth v. Brady*, 560 A.2d 802 (Pa. Super. 1989). Appellant's Brief at 15-16. In *Brady*, Appellant argues, this Court concluded the evidence only established the defendant's mere presence at the scene, and not his participation in criminal activity. *Id.* at 16; *see also Brady*, 560 A.2d at 806-07.

Comparing the elements of accomplice liability to those required to establish a conspiracy, Appellant argues,

> [i]n the instant matter, although the jury may have found [Appellant's] presence at the scene of the crime to be "suspicious," that inference is mitigated by the equally reasonable inference that [Appellant] did not know a shooting was going to happen; was frightened by the shooting; and thus immediately fled when it happened. Had [Appellant] been aiding or participating in the crime, he would have assisted the shooter by ferr[y]ing him from the scene of the crime, rather than fleeing and leaving the shooter to fend for himself. Thus, it is equally reasonable to infer that [Appellant] was not a participant in the crime….

*Id.* at 16.

Appellant challenges the sufficiency of the evidence underlying his convictions. In reviewing such a challenge, we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Bibbs*, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not

- 4 -

substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

*Id.* (citation and quotation marks omitted). "Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Scott*, 967 A.2d 995, 998 (Pa. Super. 2009).

Appellant was convicted of first-degree murder as an accomplice. Our Supreme Court has explained,

> [f]irst-degree murder is an intentional killing, *i.e.*, a "willful, deliberate and premeditated killing." 18 Pa.C.S.[A.] § 2502(a), (d). In order to prove first-degree murder, the Commonwealth must establish that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill. [*Commonwealth v.*] *Smith*, 985 A.2d [886,] 895 [(Pa. 2009)]. The jury may infer the specific intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body. *Id.*

*Commonwealth v. Le*, 208 A.3d 960, 969 (Pa. 2019).

An accomplice may also be held legally accountable for the conduct of another individual involved in the commission of a crime. *See* 18 Pa.C.S.A. § 306(b)(3). The Crimes Code provides, in relevant part, as follows:

**§ 306. Liability for conduct of another**; **complicity**

**(a) General rule**.--A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

**(b) Conduct of another**.--A person is legally accountable for the conduct of another person when:

- 5 -

* * *

**(3)** he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined**.--A person is an accomplice of another person in the commission of an offense if:

**(1)** with the intent of promoting or facilitating the commission of the offense he:

* * *

**(ii)** aids or agrees or attempts to aid such other person in planning or committing it….

18 Pa.C.S.A. § 306(a)-(c).

Appellant relies on this Court's decision in **Brady** to support his claim of non-culpability based upon his being merely present at the scene. As described by this Court,

[i]n **Brady**, the defendant sat as a passenger in a car while the driver of the vehicle left the vehicle, entered a residential dwelling through a window, removed personal property, and placed the property in the trunk of the car. On this evidence, a jury found the defendant guilty of burglary but not guilty of conspiracy to commit burglary. Our Court reversed the defendant's burglary conviction because there was no evidence that the defendant exited the car or assisted the driver during these events **and because the driver of the car testified that the defendant had not participated in the burglary in any way**. Accordingly, the evidence was insufficient to show that the defendant was an accomplice. **Brady**, 560 A.2d at 806.

**Commonwealth v. Lambert**, 795 A.2d 1010, 1025 (Pa. Super. 2002) (*en banc*) (emphasis added).

Our review discloses that at trial, the Commonwealth first presented the testimony of Philadelphia Police Officer Andrew Haenchen. N.T., 4/18/23, at 15. Officer Haenchen testified that on April 8, 2020, at around 3:35 p.m., he was dispatched to the scene of a "person shot on the highway, around 1500 North Marshall Street, which is Marshall and Jefferson." *Id.* at 17. Within a minute, Officer Haenchen arrived at the scene. *Id.* Officer Haenchen testified,

> As we pulled up, within twenty yards of … the opening of the block, there was a vehicle sideways that was shot up multiple times.
>
> As we approached the vehicle, we found [decedent] slumped over in the driver's side seat and we tried to pull him out of the vehicle and get him into one of our vehicles ….

*Id.* at 18.

As the trial court explained,

> Officer Haenchen observed a vehicle with bullet holes on the driver's side. Inside, he found [decedent] unresponsive, slumped over in the driver's seat, with multiple gunshot wounds to his upper body. [Decedent] was taken to the hospital by the medical unit[,] where he was pronounced dead. A handgun was recovered from the driver's side floor of the decedent's vehicle.

Trial Court Opinion, 10/27/23, at 2 (citation omitted).

At trial, Boone testified that he was present at the scene when decedent was murdered. N.T., 4/18/23, at 125. Boone explained that he knew Appellant by the name of "Man Man" from the neighborhood. *Id.* at 124. Boone stated he had known Appellant for approximately two or three years prior to the shooting. *Id.* at 124-25. Boone also testified that he knew decedent "pretty much by face." *Id.* at 124.

- 7 -

Boone testified that on April 8, 2020, at around 3:35 p.m., he "was standing on the corner, talking to another guy. There w[ere] other people there." *Id.* at 125. According to Boone, he observed decedent drive up. *Id.* at 126. Boone testified that the decedent

> asked me a question, he said when would the barber be in town? So I told him, I said he comes and goes as he please [*sic*].

*Id.* Boone stated that decedent then drove further down the street, exited his vehicle, and walked about 15 feet.[3] *Id.* at 127.

The trial court summarized Boone's trial testimony:

> The decedent exited his vehicle and began walking towards Mr. Boone[,] when a black vehicle pulled up and a male dressed in black with a gun exited the vehicle from the backseat passenger side. He was wearing gloves and a paper hospital mask. The gun looked like a MAC-10 (pistol/submachine gun) with an extended clip. Another male exited the driver's seat. The decedent ran back towards his car and the male with the gun began firing at the decedent. Boone ducked when he heard the shots. Boone testified that he could not identify the males.
>
> Boone was impeached with a statement he gave to detectives two weeks after the murder, wherein he stated that he saw [Appellant] "get out of the driver's seat and the other guy get out with a mask and everything on." Additionally, Boone told detectives that [Appellant] jumped back into the driver's seat of the car and drove off, while the shooter left the area on foot.
>
> After being impeached, Boone testified that he was not one hundred (100) percent sure who got out of the car; he never identified [Appellant]; he had post-traumatic stress from the incident; he was pressured by detectives into giving a statement, and the detectives [improperly] inserted his identification of

---

[3] Boone admitted he previously had not described decedent as getting out of his car. N.T., 4/18/23, at 127. Boone further admitted his testimony differed from his prior statement to police. *Id.* at 129.

[Appellant] into his statement. *Id.* [at] 123-202 (***see also*** N.T. 4/19/2023, 91). [Philadelphia Police] Detective Ralph Domenic from the Homicide Unit testified that he and [another detective] interviewed [] Boone after the murder. Mr. Boone was cooperative and identified [Appellant] as the driver of the vehicle. Moreover, Boone willingly answered questions and signed his statement[,] as well as a photograph identifying [Appellant] as the driver of the vehicle. However, Boone refused to allow his statement to be videotaped. N.T. 4/19/2023, 70-103.

Trial Court Opinion, 10/27/23, at 3.

The trial court further described the video evidence presented to the jury:

[Philadelphia Police] Officer Joseph Goodwin testified that he worked in the East Division for twenty-seven years. He [has known Appellant] for ten (10) years. While testifying before the jury, Officer Goodwin was shown the compilation video of the area of the murder at the time of the murder and identified [Appellant], along with his brother and other individuals who appeared in the video. [Officer Goodwin] also identified their vehicles. N.T. 4/18/2023, 56-75.

Officer Goodwin identified [Appellant] in the compilation as the male with a bald head and beard, wearing a short sleeved white polo shirt. [In the video, Appellant] is [seen] interacting with four individuals on the southwest corner of 7th and Master Streets. Officer Goodwin identified those individuals as [Appellant's] brother, Teddy Lawrence [(Teddy)], who is wearing a striped shirt, [] Wright, who is wearing all black and a white medical face mask, and Zaire Epps [(Epps)], who is wearing an unzipped black jacket. Officer Goodwin could not identify the fourth male, who was wearing a red shirt. [Appellant] and Wright walk away from the corner heading southbound, briefly return, and then walk away in that same direction.

About a minute after [Appellant] leaves the corner of 7th and Master [Streets], the decedent's vehicle, identified by Officer Goodwin as a black Lincoln with a black sunroof, pulls up to the same corner. (***See*** N.T. 4/18/2023, 74, 75). [Appellant's] brother, Teddy, approaches the vehicle and interacts with the

decedent. After approximately two minutes, the decedent drives westbound on Master Street, at 3:43:37 p.m.

Immediately after the decedent drives away, a black Chevy Malibu, identified as [] Wright's vehicle, pulls up to the same corner of 7th and Master [Streets]. Officer Goodwin identifies [Appellant] as the front-seat passenger in the black Chevy Malibu. His white polo shirt, beard and bald head can be seen in the video. (*See id.*, 76).

Teddy briefly approaches the driver's side window of Wright's vehicle. The vehicle then drives off in the same direction as the decedent's vehicle, just one car behind, at 3:43:55 p.m. After Wright's vehicle pulls away, [] Epps and Teddy remain on the corner of 7th and Master [Streets] for approximately one minute before jumping into Epps's white Chevy Impala, as identified by officer Goodwin, and driving westbound on Master Street as well.

The compilation video switches to a swiveling pole camera located at 7th and Jefferson Streets. Jefferson [Street] runs eastbound. It is one block north of Master [Street,] which runs westbound.

Marshal St[reet], where the murder occurred, runs one way northbound. It is between 6th and 7th Street. 7th Street runs northbound and 6th Street runs southbound. The murder is not captured on video since only the corner of Marshall and Jefferson Streets is covered by the pole camera[,] and the murder occur[ed] on the 1500 block of Marshall Street.

At 3:46:11 p.m., less than three minutes after the decedent's car pulls off followed by [] Wright's car, the pole camera depicts individuals stopping and looking in the direction of the 1500 block of Marshall Street[,] while others run onto Marshall Street.

At 3:46:23 p.m., Epps's white Impala drives eastbound on Jefferson [Street]. His vehicle slows down at the corner of Jefferson and Marshall Streets, where the shooting [] occurred, but then continues to 6th Street and turns south. During this time, more people are observed heading towards the scene of the incident on the 1500 block of Marshall [Street].

> At 3:47:19 p.m., a store [surveillance] camera located on the corner of 7th and Master Streets captures Epps's vehicle heading westbound on Master Street. Wright's black Malibu is now directly behind Epps's vehicle. [Appellant] is now the driver of Wright's black Malibu. There are no other visible occupants. (***See id.***, 86).

Trial Court Opinion, 10/27/23, at 4-6 (capitalization modified).

The trial court concluded the evidence was sufficient to sustain

Appellant's conviction of first-degree murder as an accomplice:

> [Appellant] was identified by eyewitness Boone as the driver of the vehicle from which both [Appellant] and the shooter alighted. The shooter was carrying a Mac-Ten submachine gun in both hands and instantly began firing over 20 (twenty) rounds. [Appellant] then jumped back into the vehicle and removed it from the scene[,] while the shooter left on foot.

> Additionally, the video evidence established that [Appellant] was hanging out on the southwest corner of 7th and Master Street, with his brother Teddy, [] Epps, and [] Wright. [Appellant] then left with [] Wright. A minute later, the decedent stopped at the corner in his vehicle, interacted with [Boone] for a few seconds and drove away. A black Malibu, identified as Wright's vehicle by Officer Goodwin, briefly interacted with [Boone], and then followed the decedent's vehicle, one car behind. The passenger in Wright's vehicle was identified as [Appellant] by Officer Goodwin. [Appellant's] white polo, beard, and bald head are observable on the surveillance video. The shooting occurred less than two blocks from 7th and Master Streets, so [Appellant] changed positions from passenger to driver within those two blocks and then drove the vehicle away from the murder. Moreover, the video shows that [Teddy] and [] Epps followed one minute behind the car that [Appellant] was in and traveled the same loop, slowing down on the corner of the 1500 block of Marshall [Street,] but then continuing back to the corner of 7th and Master Streets followed by [Appellant], who was now driving the black vehicle. The circumstantial evidence showed that this was a planned execution with [Appellant] playing the role of the driver.

Trial Court Opinion, 10/28/23, at 9-10. The trial court's findings are supported by the evidence.

Unlike the perpetrator in **Brady**, Wright did not claim sole responsibility for the murder. Further, Appellant's participation before and after the murder demonstrated more than his mere presence at the scene. **See id.** Based on the foregoing, we agree with the sound reasoning of the trial court and its conclusion that Appellant's convictions are supported by sufficient evidence. **See id.** Accordingly, Appellant's challenge to the sufficiency of the evidence merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/18/2024